FARMERS' LOAN & TRUST CO. v. IOWA WATER CO. et al. (OTTUMWA NAT. BANK et al., Interveners).

(Circuit Court, S. D. Iowa, E. D. February 1, 1897.)

No. 195.

1. MORTGAGE BONDS—PRIOR LIEN COUPONS—PAYMENT—TRANSFER.

The I. Co. issued a number of bonds, secured by a mortgage, under the terms of which the coupons of the bonds were a lien prior to the principal. A few days before the maturity of one set of coupons, the I. Co. remitted to the trust company, at whose office they were made payable, a sum less than the whole amount of maturing coupons. On the day the coupons matured, one V., who was under no legal obligation to do so, but who wished to prevent a public default on the bonds, agreed with the trust company that it should buy, for his account, any coupons presented which it had no funds to pay. Accordingly, the trust company turned over to V. 93 coupons, and received from him the money for them. There was no notice, actual or constructive, to the bondholders, of these transactions, but they simply presented for collection their coupons at the place where they were to be paid upon presentation and cancellation, and the coupons were apparently paid. The 93 coupons received by V. were transferred by him, for value, to a corporation of which he was a director, which afterwards, in a foreclosure suit commenced some time later against the I. Co., presented the coupons, and claimed a preference for them. *Held* that, as against the bondholders, neither V. nor his transferee could be held to be purchasers of the coupons, or entitled to a preference over the bonds, but the coupons must be treated as paid.

2. CORPORATIONS—RESOLUTION FOR ISSUANCE OF BONDS.

It seems that a resolution of the directors and stockholders of a corporation, providing for the making of a mortgage to secure an issue of bonds, which should contain such terms and conditions as are generally contained in like instruments, authorizes the making of a mortgage containing a provision for the falling due of the principal of the bonds upon a default in interest.

3. MORTGAGE FORECLOSURES—REDEMPTION—QUASI PUBLIC CORPORATIONS.

Section 3321 of the Code of Iowa, relating to the redemption of property sold under a decree for the foreclosure of a mortgage, does not apply to the property necessary to the exercise of the franchises of a quasi public corporation, such as a company formed for supplying a town with water, but the mortgaged property and franchises of such a corporation should be sold as an entirety, and without redemption. Hammock v. Trust Co., 105 U. S. 77, followed.

## On Exceptions to Report of Special Master.

The Iowa Water Company (hereinafter spoken of as the "Water Company"), a corporation organized under the laws of the state of Iowa, upon April 15, 1887, executed its bonds, secured by trust deed wherein complainant, a corporation organized under the laws of the state of New York, is named as trustee, to the face value of $400,000. The property described in the trust deed included the franchises, rights (real and personal), and all other property at the date of said deed owned by said water company, as well as that which should be thereafter acquired and owned by it. The description, as given in the trust deed, is specific and lengthy, and is accepted by all parties hereto as sufficient. The New England Waterworks Company (hereinafter spoken of as the "Waterworks Company") claimed, by its petition of intervention, to be entitled to payment with preferences on account of certain coupons held by it, while C. H. Venner, in his petition of intervention, claimed to be entitled to have the mortgaged plant sold, subject to redemption, etc., so that he may redeem as holder of a judgment by him recovered against said water company. Hon. W. I. Babb was appointed special master, and, after an extended hearing, has filed his report. The waterworks company and Venner have filed their several exceptions, and the present hearing is on such exceptions.

78 F.—56

W. A. Underwood and H. Scott Howell, for complainants.

Wm. McNett and James C. Davis, for Iowa Water Company.

Blake & Blake, for interveners New England Waterworks Company and Clarence H. Venner.

WOOLSON, District Judge.    The master's report is specific and complete on the matters referred to him. · So far as it relates to the exceptions filed against it by the waterworks company, Judge Babb's report, in its finding of facts, is as follows:

"This company intervenes for 93 coupons, of thirty dollars each, all of which matured on the 1st day of April, 1891, and which were cut from the following bonds of the Iowa Water Company, to wit [describing them]. That said intervener claims payment of said coupons, with interest thereon from April 1, 1891, alleging that these coupons were purchased, and not paid, when they were taken up. This is denied by the separate answer of the complainant, and the facts which I find established by the evidence on this issue are as follows:

"The coupons of the Iowa Water Company are all made payable at the office of the Farmers' Loan and Trust Company, in the city of New York. That, while they became due on the 1st days of April and October in each year, yet there is a provision in the fourth paragraph of the mortgage made to secure the bonds and coupons by which said water company may have 90 days of grace in which to pay any installment of interest after the same becomes due, before default could be claimed against the water company, and before an action of foreclosure could be commenced therefor. That on March 3 and March 28, 1891, the officers of the Iowa Water Company duly remitted to the Farmers' Loan and Trust Company, trustee, in two separate amounts, the aggregate sum of six thousand one hundred ninety-five dollars and forty-five cents ($6,195.45), on account of and to apply upon the payments of the coupons of the Iowa Water Company which were to mature on the 1st of April, 1891, and which sum so remitted was received by said trust company, and placed to said account on or before the 31st day of March, 1891.    That on or about April 1, 1891, C. H. Venner, of the firm of C. H. Venner and Company, called upon the Farmers' Loan and Trust Company, and made inquiry of them as to whether or not they had received sufficient funds to pay the coupons of the Iowa Water Company falling due on that day.    He was informed by the vice president of the Farmers' Loan and Trust Company of the amount they had received for that purpose, but it was not sufficient to pay the full amount of interest falling due on said bonds on that date.    He was further informed in said interview that they had been advised that the balance would be sent later on.    Mr. Venner then tried to induce the Farmers' Loan and Trust Company to make the necessary advances to pay said coupons as they might be presented, and to rely upon the provisions of the mortgage to protect them. · This they refused to do.    He then stated to them that he was unwilling to advance any money to the Iowa Water Company to pay the balance of said coupons, but that his firm, C. H. Venner and Company, would buy so many of the coupons falling due on that day as the trust company did not have money to pay for, after the funds they had on hand were exhausted.    He suggested that the trust company might inform all parties presenting coupons that C. H. Venner and Company, No. 33 Wall street, New York, would pay said coupons.    Either Mr. Searls or Mr. Leupp, vice presidents of said Farmers' Loan and Trust Company, said it would be better for the trust company to buy the coupons for the account of C. H. Venner and Company, and, when purchased by them, to then deliver the said coupons to C. H. Venner and Company, and obtain their check for the amount of the purchase price.    This plan was agreed to by these parties at that time.    In pursuance of that arrangement, the Farmers' Loan and Trust Company took up 112 of said coupons falling due April 1, 1891, said coupons being for thirty dollars each, and which included the 93 coupons involved in this intervention.    On or about April 9, 1891, the said trust company delivered to said C. H. Venner and Company said 112 coupons, which included the 93 now in controversy.    The 93 now in question were punched as they now appear, and being in a way to indicate that they were paid and canceled.    But said coupons were accompanied by a letter

signed by W. D. Searls, as the first vice president of said trust company, a copy of which letter is as follows:

"'New York, April 9, 1891.

"'Messrs. C. H. Venner & Co., 33 Wall Street, City—Gentlemen: The following numbered coupons of the Iowa Water Company due April 1, 1891, were canceled by us in error, to wit: [Here follows specific enumeration of said 93 coupons.]                              The Farmers' Loan and Trust Co.,

"'By W. D. Searls, V. P.'

—"That upon presentation of said coupons and said letter, after some hesitation, the said C. H. Venner and Company paid over to the Farmers' Loan and Trust Company three thousand three hundred and sixty dollars ($3,360), being the money paid out by said trust company for said coupons.

"I further find that it was fully understood between the said Farmers' Loan and Trust Company and said C. H. Venner and Company, at that time, that this transaction was a purchase of said coupons by said C. H. Venner and Company, and not a payment of them. I also find that no notice of any kind was ever given to the public or to the bondholders of this fact, and the evidence shows that the bondholders supposed that their coupons were being paid, and not purchased; and I fail to find that there was any fact or circumstance which would tend to give them notice of the fact that the coupons were being purchased, unless the knowledge of the trust company would be notice to them of such fact. I also further find that on June 24, 1891, a few days before the expiration of the 90 days when default would accrue, under the mortgage, for failure to meet the coupons falling due April 1, 1891, the Iowa Water Company, through S. L. Wiley, its president and treasurer, sent to the Farmers' Loan and Trust Company three thousand six hundred and sixty-three dollars ($3,663), which, with what it had previously sent, was sufficient to take up and pay all coupons maturing on April 1, 1891, which remittance was followed by another letter from him, dated July 6, 1891, in which he forbids the trust company from paying to C. H. Venner and Company anything on account of the coupons which they may have paid or purchased, in which letter and in former letters he claimed that C. H. Venner should pay the interest on 120 of said bonds. The trust company did pay off 19 of the coupons which had been purchased on account of C. H. Venner and Company, and which were presented by the clerk of C. H. Venner and Company to them for payment, and who was known by them to be such clerk, which coupons had not been punched; but they did not pay back to C. H. Venner and Company the money for the 93 coupons now involved in this suit, and they subsequently returned to S. L. Wiley the balance of the money which he sent them on June 24th. I find, under the evidence, that neither C. H. Venner nor C. H. Venner and Company were under any legal obligations to pay the said coupons; that C. H. Venner had originally sold a great bulk of said bonds, and felt an interest in seeing that the coupons were paid when due, and that there should be no default under the mortgage, but that he was under no legal obligations to pay said coupons. I also find that said coupons were sold and transferred to the present intervener the New England Waterworks Company, in 1894, for a full and valuable consideration, and that it is now the legal owner of the same, unless said coupons shall be regarded as paid before said transfer was made to it. I also find that C. H. Venner is the president and one of the directors in the New England Waterworks Company, and has been since some time in 1893."

### As conclusions of law, applicable to such facts, Judge Babb finds:

"There can be no question under the facts, I take it, but that as between C. H. Venner and Company and the Iowa Water Company, or as between C. H. Venner and Company and the Farmers' Loan and Trust Company, the transaction by which these different coupons passed into the hands of C. H. Venner and Company was intended by these parties as a purchase, and not a payment of the same. The evidence shows that this was done without the knowledge and without the consent of the bondholders, and that, at the time they received their money on such coupons, they supposed the transaction was a payment of their coupons, and they have never in any manner ratified it as a purchase, and, in fact, had no knowledge of it being claimed to be a purchase until the interventions were filed in this foreclosure proceeding. Under these circumstances, what are the

rights and equities of the parties? These coupons were payable at the office of the Farmers' Loan and Trust Company in New York. They were remitted by the holders of the bonds through their local banks, and sent to New York for collection. They were presented to the Farmers' Loan and Trust Company, not for sale, but for payment. They received their money, and delivered their coupons to the Farmers' Loan and Trust Company. They supposed that their coupons were paid and canceled, but, instead of that, they were delivered to Venner and Company uncanceled. If the bondholders had known this, they could, and it is reasonable to suppose that they would, have refused to sell, and, if they were not paid, would have taken prompt steps to bring about a foreclosure a number of years before this suit was commenced. The payment of the coupons strengthened the security of their bonds, but a sale of such coupons allowed the indebtedness to accumulate, and the income of the mortgaged property to go to other purposes, and the coupons, which were a first lien before their bonds, passed into other hands, and became a prior lien to their bonds. The question was very ably argued by counsel on both sides, and I have considered the various reasons advanced by each, and have examined the authorities cited; and it seems to me, both upon reason and authority, that neither Venner and Company nor the purchasers from them can be held to be purchasers of such coupons as against the bondholders, when they were purchased under the circumstances shown in the evidence in this case."

The exceptions of the waterworks company, as to findings of fact, are as follows:

"To the finding of facts contained on page 19, 'that the bondholders supposed that their coupons were being paid, and not purchased,' for the reason that there is an entire absence of evidence tending to establish any such fact on the part of any bondholder as to all the bonds, and for the further reason that there is an entire absence of evidence of any one as to at least sixteen of said bonds and coupons; and the master should have found that there was no evidence from any bondholder tending to show that such bondholder merely collected said coupons, and particularly as to sixteen of said bonds and coupons."

This is the sole exception as to the master's finding of facts with regard to the intervention of the New England Waterworks Company. On the oral argument, such exception was by counsel for said waterworks company so limited and reduced as to apply to only 16 of the 93 coupons named in the master's report, said 16 coupons being those falling due April 1, 1891, and cut from the bonds Nos. 72, 73, 94, 95, 96, 97, 98, 101, 103, 117, 118, 120, 121, 126, 299, and 361. The exceptions as to the master's conclusions of law which the waterworks company has presented are based on its above-stated exception to findings of fact; and upon the oral argument it was conceded by counsel for the waterworks company that, unless the exception as to findings of fact was sustained, the exceptions to conclusions of law could not be sustained.

Under the facts found by the master, as above given, what is the law to be applied thereto? I leave out of consideration in this matter the fact, found by the master, that, before the expiration of the 90 days of grace allowed under the trust deed, the water company remitted to the trustee, and there was in its hands, sufficient money, in addition to that theretofore remitted, to have paid all these coupons, if the same had remained in the hands of the trustee; for the water company, in so remitting, had attached, as a condition, that no part of this remittance should be paid to C. H. Venner & Co. on account of any coupons that firm had paid for or purchased, and also because the trustee returned to the water

company the balance remaining after payment of the other coupons of that maturity. Neither C. H. Venner nor C. H. Venner & Co. was under any legal obligation to pay these coupons. Thus the master finds. He also finds that the waterworks company is the legal owner of these coupons, for a due consideration, purchased of said Venner & Co., and that its rights, whatever they are, to payment thereof, are the same as Venner & Co. would have possessed had they not sold same.

Two parties are, by the record, resisting the payment herein of these coupons to the waterworks company. One is the complainant trustee; the other, the bondholders, through their committee. It may properly here be stated that the trustee, at the hearing on these exceptions, asked leave to withdraw its resistance and answer. But, the interveners objecting thereto, the court denied such leave. It therefore remains in the record as resisting. If, as to either of these, preferential payment ought not to be made, the exception must be overruled. Whatever might be the holding, if the coupons and bonds stood on the same footing as to payment out of the trust estate, we may not lose sight of the fact that here the coupons had preference in payment. When the bondholder sent his coupon in for payment, and such coupon was "presented and surrendered" to the trustee as having been paid, he knew that this payment lessened the outstanding (possible and probable) indebtedness of the water company,—for that much of the amount secured by the trust deed had been extinguished; while, if the coupon, instead of being surrendered and paid, was sold, transferred to another as an existing indebtedness, this transferred coupon stood between his bond (and its attached coupons) and the trust estate, and must be paid before his bond (and attached coupons) could be paid. Had the bondholders been informed that the trust company was purchasing these coupons for Venner & Co., and not paying and canceling them, they might have refused to sell, and insisted on payment of coupons out of the revenue of the water company, or, in case of nonpayment, compelled foreclosure, before further indebtedness on these bonds had accrued against the trust estate.

The argument on this point, as presented in the master's report, is very clear, and to me convincing. After quoting section 772, 2 Cook, Stock, Stockh. & Corp. Law (3d Ed.):

"When coupons are presented for payment, and are cashed, they are to be held canceled so far as the bonds and other coupons are concerned. Even though a third person was buying them, instead of the company paying them, the bondholders may insist upon their mortgage lien, free from these purchased coupons. The reason is that it takes two persons to make a sale, and, moreover, the coupon holders might have preferred to foreclose, rather than to sell."

—Judge Babb cites Ketchum v. Duncan, 96 U. S. 659, and Wood v. Deposit Co., 128 U. S. 424, 9 Sup. Ct. 131, and various other cases. He quotes from the former case (page 662):

"It is undoubtedly true that it is essential to a sale that both parties should consent to it. We may admit, also, that where, as in this case, a sale, as compared with a payment, is prejudicial to the holder's interest, by continuing the

burden of the coupons upon the common security, the intent to sell should be clearly proved."

Having stated the doctrine of these cases to be that:

"It is a question of fact in each case whether or not the transaction between the bondholders and the person paying the money for the coupons amounted to a sale and purchase, or a payment of the same."

—He summarizes the rule of the supreme court as therein stated to be:

"If, under all the facts and circumstances, the bondholders had the right to suppose it was intended to be a purchase, and not a payment, and the person paying the money intended it for a purchase, then, in that event, it would be treated as a purchase. On the other hand, if there was nothing in the transaction by which the bondholders would be placed on their guard, and nothing to indicate to them that it was intended as a purchase, it will be treated by the courts as a payment of such coupons."

As to the question of fact involved, the master says:

"I fail to find anything, and counsel have failed to point out any facts or circumstances, by which the bondholders in this case could have been advised that Venner & Co. were furnishing the money to the trust company to take up these coupons. They were paid at the place where, by their terms, they were to be paid ["presented and surrendered"]; and, to all appearances, they were paid by the party who was to pay them. There was no notice of any kind given of the intent of any one to purchase, or of the inability of the water company to furnish the money to take up, the coupons."

See upon this point, also, for application of rule, Claflin v. Railroad Co., 8 Fed. 118; Railroad Co. v. Gest, 34 Fed. 639.

Concurring, as I do, in the master's finding of fact, the exceptions of the New England Waterworks Company must be overruled. And an exception to this ruling is allowed to that company.

The exceptions presented by Clarence H. Venner relate to the sale under the trust deed. Venner intervenes as a judgment lien holder, his judgment bearing date April 23, 1896, for $9,609.80.

The first exception is to finding of fact in master's report, and relates to whether the property should be sold as an entirety. Upon oral hearing before the court, counsel for Venner expressly abandoned this exception.

The second exception is to conclusion of law in master's report, viz.:

"To the conclusion of law, 'that the Iowa Water Company was authorized, under the laws of Iowa, to execute the bonds and mortgage in question, and that the bonds and mortgage in question were executed under proper authority,' for that the master should have found, upon the facts found, the following conclusion of law, to wit: 'That the Iowa Water Company had no power to execute the mortgage and bonds in question.'"

Upon oral hearing, counsel for Venner abandoned so much of the exception as related to the corporate power of the water company to execute a mortgage or trust deed, such as that in process of foreclosure herein, and conceded that, under the statutes of the state of Iowa, such company was, under its articles of incorporation, empowered to execute the trust deed in question. But counsel contended that the mortgage or trust deed in question had not been legally executed by the water company. His contention was based upon the resolutions adopted by the board of directors and

the stockholders of that company, preliminary to the execution of the bonds and trust deed in question. And, while conceding that in other respects the trust deed was in accordance therewith, counsel insisted that that portion of the trust deed by whose terms the principal of the bonds was made to fall due upon default in payment of interest, as in said deed provided, was not authorized by nor consistent with said preliminary resolutions, and therefore the decree herein to be entered could not find said principal now due, but must order sale only for interest (coupons) in arrears; thereby compelling said Venner, in case he redeem from said sale, to redeem from interest (coupons) sale only, and not from sale for principal. There seems no exception filed which saves this point to intervener. The point covered by his exception relates to what he claims the master should have found, viz.: "That the said Iowa Water Company had no power to execute the mortgage and bonds in question." If, however, his exception had been so lodged as to cover this point now made, his exception must have been overruled. The resolutions expressly authorized the bonds and trust deed to contain such "terms, conditions," etc., as were generally contained in like instruments, and were consistent with the other parts of the resolutions. And the court might well take judicial notice that trust deeds of the character of that in question generally, provide for falling due of principal on default of interest, such as that herein provided. Besides, the bonds and trust deed, in their present form, were submitted to, and formally adopted by, the board of directors of said water company, before the same were executed. Further, under section 3325, Code Iowa, it is provided, on foreclosure of real-estate mortgages, that, "if there are any other payments secured by the same mortgage, they shall be paid off in their order; and, if the money secured by any such lien is not yet due, a suitable rebate must be made by the holder thereof, or his lien on such property will be postponed to those of a later date." The principal of the bonds in question matures on the 1st day of April, 1897. So that, had intervener lodged and maintained proper exceptions to the master's report in this respect, no substantial relief or benefit could have accrued to him thereunder.

The only exception presented by intervener Venner which is before the court for consideration is as follows:

"Your intervener excepts to the following conclusions of law, to wit: 'That complainant is entitled to have a decree authorizing the property sold as an entirety without redemption,'—for that the master should have found, upon the facts found, the following conclusion of law, to wit: 'That said property, when sold under the decree, is subject to redemption under the laws of the state of Iowa, and of the United States, applicable to such cases.' "

Section 3321, Code Iowa, provides:

"When a mortgage or deed of trust is foreclosed by equitable proceedings, the court shall render judgment for the entire amount found to be due, and must direct the mortgaged property, or so much thereof as is necessary, to be sold to satisfy the same, with interest and costs. A special execution shall issue accordingly and the sale thereunder shall be subject to redemption as in cases of sale under general execution."

That a state law conferring the right of redemption under a decree to enforce the lien of a mortgage or trust deed is binding upon federal courts, as to lands within the state in which said court is sitting, is settled beyond dispute by repeated decisions of the supreme court of the United States. Brine v. Insurance Co., 96 U. S. 627; Orvis v. Powell, 98 U. S. 176; Parker v. Dacres, 130 U. S. 43, 9 Sup. Ct. 433. A decree of foreclosure, ordering sale of mortgaged real estate, must therefore be so entered, in the federal courts, as to conform to the state law, and give full force to this right of redemption, in all cases where the state law applies. So much is conceded by counsel herein. The contention is whether the property upon which the lien of the trust deed in question operates is within the above-quoted statutory provision of this state. If it is, then it must be so sold as that redemption shall be permitted, otherwise the decree must provide for sale without redemption; for, as stated by Justice Harlan in announcing the unanimous opinion of the court in Parker v. Dacres, 130 U. S. 43, 47, 9 Sup. Ct. 433, 434:

"A right to redeem after sale does not exist unless given by the statute. * * * We are not aware of any such right existing at common law, or in the system of equity as administered in the courts of England, previous to the organization of our government. * * * This right, when thus given [by state statute], is a substantial one, recognized even in the courts of the United States sitting in equity, because the statute constitutes a rule of property in the state that enacts it."

In his fourth finding of fact, the master finds that the mortgage or deed of trust herein sought to be foreclosed included within its lien the following, among other, property, etc., to wit:

"All its privileges, franchises, easements, choses in action, estates, property, real and personal, which said Iowa Water Company now has or at any time hereafter, during the existence of this mortgage, may acquire," etc.

The master's fourteenth finding of fact is as follows:

"The mortgaged property and premises are so situated that they cannot, nor any part thereof, be sold in parcels without great injury to the holders of said bonds secured by said mortgage; and that said corporation is a corporation of a quasi public nature, and the property mortgaged is in use for the public service, and consists of public franchises, together with real and personal property necessary for the operation of such franchises, and a large part of the value of the real and personal property covered by the mortgage depends upon it being so used and appropriated with said franchises for public purposes."

The master's conclusions of law include the following:

"In regard to the right of complainant to have a decree to have the property sold as an entirety without redemption, I have come to the conclusion that it is entitled to such a decree. * * * I am of the opinion that the complainant is entitled to a decree foreclosing its mortgage, and that the decree should provide that it be sold without redemption."

Upon the hearing, counsel for intervener Venner having expressly abandoned so much of this exception as related to the sale of the property as a whole, and conceded the decree should provide for selling the mortgaged property as an entirety, there remains but the single point, should the decree herein provide for sale subject to redemption? Since the announcement by the supreme court

of their holding in Hammock v. Trust Co., 105 U. S. 77, there seems to have been a very general concurrence by bench and bar in the doctrine that where a railroad has mortgaged its real and personal property, including its franchises, as a whole or as an entire property, a sale, under decree foreclosing such mortgage, must be of the property as an entirety, and without redemption. But counsel for intervener Venner insists that the decision in the Hammock Case is not applicable in Iowa, because, as he contends, of the differing state statutes; and that the Hammock decision was based on the Illinois statute, which provided that, where lands were sold under decree of a court of equity for the sale of mortgaged lands, redemption should be permitted "in the same manner prescribed for the redemption of lands sold by virtue of executions issued upon judgments at common law." Rev. St. Ill. 1869 (Gross' Ed.) p. 382, § 27. Counsel further contends that the Illinois statute under consideration in the Hammock Case, when construed in the light of the decision in Gue v. Canal Co., 24 How. 257, renders the decision in the Hammock Case inapplicable to the Iowa statute above quoted.

In the Gue Case (which involved the right to levy, under execution against the property of the canal company, upon certain locks and other like property which was essential to the use of the canal), the supreme court (page 263) use the following language:

"Now, it is very clear that the franchise or right to take toll on boats going through the canal would not pass to the purchaser under this execution. The franchise, being an incorporeal hereditament, cannot, upon the settled principles of the common law, be seized under a fieri facias. If it can be done in any of the states, it must be under a statutory provision of the state; and there is no statute of Maryland changing the common law in this respect."

In the Hammock Case the supreme court (page 90) say:

"We are of opinion that mortgaged real estate, to which is attached the right of redemption, is such, and such only, as could at law be levied upon and sold on execution. The right does not extend to real estate of a public corporation, mortgaged with its franchise to acquire, hold, and use property for public purposes, and whose chief value depends upon its being so used and appropriated."

From which counsel insists that the doctrine of the Hammock Case is not applicable to cases arising under the Iowa statute; section 1086 of Code of Iowa being as follows:

"The franchise of a corporation may be levied upon under execution and sold, but the corporation shall not become thereby dissolved, and no dissolution of the original corporation shall affect the franchise, and the purchaser becomes vested with all the powers of the corporation therefor. Such franchise shall be sold without appraisement."

Whether section 1086 of the Iowa Code applies to the franchise to be a corporation, obtained by adoption of its articles of incorporation (under section 1059 of that Code), or to the franchise to operate the works, etc., of the water company in the city, and through the streets of the city, of Ottumwa (commonly called its municipal or noncorporate franchise), does not appear to have been the subject of construction of the supreme court of Iowa. Apparently, section 1086 relates to the former, since, when such franchise is sold under execution, "the corporation shall not become

thereby dissolved," etc. "This franchise (to be a corporation) is personal, and cannot be assigned, but there is no objection to assigning noncorporate franchises," Circuit Judge Taft declares, in City of Detroit v. Detroit City Ry. Co., 56 Fed. 867, 882.

Justice Curtis, in Hall v. Railroad Co., 21 Law Rep. 138, Fed. Cas. No. 5,948, when treating of the power of a corporation to mortgage its franchise, says:

"Among the franchises of the company is that of being a body politic, with rights of succession of members, and of acquiring, holding, and conveying property, and suing and being sued by a certain name. Such an artificial being only the law can create; and, when created, it cannot transfer its existence into another body, nor can it enable natural persons to act in its name, save as its agents or as members of the corporation, acting in conformity with the modes required or allowed by its charter. The franchise to be a corporation is therefore not a subject of sale and transfer, unless the law, by some positive provision, has made it so, and pointed out the modes in which such sale and transfer may be effected. But the franchise to build, own, and manage a railroad, and to take tolls thereon, are not necessarily corporate rights. They are capable of existing in and being enjoyed by natural persons, and there is nothing in their nature inconsistent with their being assignable."

A court of equity, in its decree foreclosing the trust deed in question, might properly decline to hold that the term "franchises," as used therein, included the franchise to be a corporation. The construction for which counsel for intervener Venner contends is not in accord with that generally given to the Hammock Case. Counsel has not pointed the court to any case in circuit or supreme court which has adopted his construction. Perhaps the effect of the decision in the Hammock Case, supra, can be best presented by quoting from the opinion given by Judge Shiras in Simmons v. Taylor, 38 Fed. 682, 694. The mortgage in that case was upon a line of railway in Iowa. The learned judge concisely summarizes the doctrine of the Hammock Case, as to right of redemption of such property when sold at judicial sale, under foreclosure decree:

"So far the case has been viewed upon the assumption that the property was of such a nature that there existed relative thereto the same rights of redemption that pertain to ordinary realty. The property, however, included in the foreclosure sale, and now sought to be redeemed, was a line of railway, its franchises and appurtenances, consisting of a combination of realty and personalty, which, from its public uses and peculiar nature, require to be sold as an entirety. In ordering a judicial sale of a railway and its appurtenances, a court is compelled to have regard to the peculiar character of the property, and cannot ordinarily treat it as composed of items of realty and personalty, separable from each other, and salable under the distinct rules that usually govern sales of such differing classes of property. Thus, in Hammock v. Trust Co., 105 U. S. 77, the supreme court held that the provisions of the statute of Illinois governing the sale of realty on judicial process, and securing to the debtor, and also to judgment creditors, the right of redemption, were not applicable to sales of a railway and its appurtenances, for the reason that, if the same were held applicable, then the personalty and the franchise would have to be sold without redemption, while the realty would be subject to redemption, which would result in the practical destruction of the value of the whole; and upon considerations of public policy, as well as of private right, the court reached the conclusion that the real estate, franchises, rolling stock, and other property of a railroad corporation, mortgaged as an entirety, may be sold as an entirety, under the decree of a court of equity, without any right of redemption in the mortgagor or in judgment creditors as to such real estate. The reasoning of the court in that case demonstrates the fact that a decree for a sale subject to a right of redemption of the realty, or, in fact, of the whole property, would be deem-

ed by that court an improvident and improper decree. Under the provisions of the statutes of Iowa, if it should be held that the property of a railway company, in cases of mortgage foreclosures, was resolvable into its primary elements of realty and personalty, the purchaser at the sale would be entitled to the immediate possession of the personalty, but the railway company would be entitled to the possession of the realty until the expiration of the year of redemption. During that period, neither the purchaser nor the railway company could operate the road, as neither would have in possession the necessary means to that end. These considerations show the wisdom of the conclusion, reached by the supreme court, that the rules ordinarily governing judicial sales of real and personal property cannot be applied without modification to foreclosure sales of railways, and that it is the duty of the court, when decreeing a foreclosure, to provide for a sale, as an entirety, of the property covered by the mortgage, so that the realty, the personalty, and the franchises, which, combined, form the railway, shall not be separated, and by separation be destroyed in their practical use and value."

In National Foundry & Pipe Works v. Oconto Water Co., 52 Fed. 43, 45, Judge Jenkins had under consideration the question how, if at all, a mechanic's lien was to be enforced against a waterworks plant, where the lien was claimed for pipe furnished to be, and which was, used in laying down mains through the streets of the city. His decision fastened such lien upon the entire waterworks plant, and provided decree for the sale of the plant as an entirety, including the franchise of maintaining and operating the plant in the city where it was located. In the course of his well-reasoned opinion he says (page 45):

"The plant must be treated as an entirety with respect to any sale under judicial process. The defendant is a quasi public corporation. * * * The plant is an integer. * * * Separation of the parts would destroy the efficiency of the whole, working destruction to all interests concerned. * * * The structure here is of the class of which canals, street railways, railroads, telegraph, telephone, electric light, and gas plants are examples, and can only be dealt with as an entirety," citing a large number of authorities.

The decision was affirmed by the circuit court of appeals for the Seventh circuit. 7 C. C. A. 603, 59 Fed. 20.

In Columbia Finance & Trust Co. v. Kentucky Union Ry. Co., 9 C. C. A. 264, 60 Fed. 794, the circuit court of appeals for the Sixth circuit were considering, on appeal, a case wherein a decree of foreclosure had ordered sale of a railway as an entirety, without redemption. The statutes of Kentucky provided for redemption of real estate when sold under foreclosure decree. Counsel for appellant had attempted, as counsel herein has attempted as to Iowa, to draw a distinction between the statutes of Illinois pertaining to right of redemption (construed in the Hammock Case) and the statutes of Kentucky. The latter statutes, as to right of redemption, are not dissimilar to the Iowa statutes. The court declare the distinction is not well taken; and, in overruling the assignment of error that "the circuit court ordered a sale without redemption and without appraisement," the court say (page 272, 9 C. C. A., and page 802, 60 Fed.):

"The Kentucky statute conferring the right to redeem real estate when sold to foreclose a mortgage, in our judgment, did not contemplate either the severance of a railroad, when sold, into its constituent elements, in order that that part which savored of realty might be redeemable; nor did it contemplate that so peculiar and composite a property should be embraced within the term 'real estate' as used in that statute. The value of such a property consists in its maintenance

as a unit. This unit the state provided might be mortgaged. It would be unprofitable to consider whether an individual, or a group of individuals, could own and operate a railroad without express authority. The franchise to be a railway, to exercise the great power of eminent domain, and to exact tolls for freight and passengers, was a franchise of value, and this, too, the legislature has permitted this company to embrace within its mortgage. Upon it credit has been extended. This is a part of the entirety which the creditors secured by this mortgage, and have a right to bring it to sale, along with the tangible property which it secures and renders valuable. That franchise is not real estate, and is not leviable at law. The controlling reasons which induced the decision in Hammock v. Trust Co. sprang from a consideration of the unity of a railroad property. These reasons are as masterful, when we come to construe the Kentucky statute, as they were in the case from Illinois. The distinction between the two statutes, and differences in the general law of Illinois and Kentucky, are not sufficiently marked to justify—certainly not to demand—that this case shall be distinguished from Hammock v. Trust Co."

Accepting as correct the holding of Judge Jenkins above given, that the plant herein to be sold is of the class which courts, in ordering sales under foreclosure, can only deal with as an entirety, and approving the finding of the master herein, that the sale under decree in this case should be of the trust property as an entirety,—against neither of which propositions is counsel now contending,—it necessarily follows, in my judgment, on the authority of the cases above cited, and on principle underlying the reasoning therein, that decree herein should order the sale of the trust property as an entirety, and without redemption, and exceptions of intervener Venner to so much of the master's report as finds the sale should be without redemption are accordingly overruled, to which said Venner excepts.