UNION TRUST CO. *v.* CHARLOTTE GENERAL ELECTRIC CO.

1. MORTGAGES — FORECLOSURE — RECEIVERS — APPOINTMENT — PROPRIETY.

On an appeal from an order appointing a receiver pendente lite, on a bill to foreclose a mortgage upon the property of an electric lighting company, evidence examined, and *held*, that there is an entire failure to show extravagant or inefficient management, or a disposition to let the plant depreciate in value, as alleged.

2. SAME—GROUNDS.

Under section 11006, 3 Comp. Laws, the trustee in a trust mortgage is entitled to a receivership pending the foreclosure of the mortgage only upon a showing that there is danger of ultimate loss to the bondholders by permitting the property to remain in possession of its owners until the final decree and sale, notwithstanding a clause in the mortgage requiring the trustee to apply for foreclosure and a receivership on default.

Appeal from Eaton; Smith, J. Submitted April 10, 1908. (Docket No. 20.) Decided May 1, 1908.

Motion by the Union Trust Company, trustee, against the Charlotte General Electric Company for the appointment of a receiver pending the foreclosure of a mortgage. From an order granting the motion, defendant appeals. Order vacated.

*Russel, Campbell, Bulkley & Ledyard* (*Colgrove & Potter*, of counsel), for complainant.

*Henry & Robert Newbegin* and *Huggett & McPeek*, for defendant.

Moore, J. This is an appeal from an order appointing a receiver pendente lite of the property and business of the Charlotte General Electric Company. The suit is commenced under a trust mortgage given to secure an issue of bonds, and as representing $13,000 of the $30,000 bonds issued. The receivership is sought as relief ancillary to the main purpose of the suit, which is to foreclose the trust mortgage.

The application for a receiver was made upon the sworn bill of complaint, certain letters of the president and majority stock and bondholder in defendant company, and an affidavit of William W. Potter supporting some of the allegations in the sworn bill. Twelve days' notice of this application was given to the defendant company, which appeared in open court on the day set and contested the application. The bill of complaint contains the usual allegations of a foreclosure bill, including the execution and delivery of the bonds and mortgage, the issuance of the bonds, the fulfillment of all conditions prerequisite to a foreclosure in case of default, and the defaults in payments of interest coupons on bonds represented by complainant trustee and covering the dates of January 15, 1906, July 15, 1906, January 15, 1907, and July 15, 1907. It further avers that the first three of said defaults in payment of interest have continued for more than six months after due notice and demand, and that in consequence the complainant trustee has exercised the option

given it, in terms, by the trust mortgage, to declare the principal of the bonds due and payable forthwith, and has commenced these proceedings.

In addition to these usual and formal averments, the bill charges insolvency of the defendant. It is charged on oath that this is a "one man" company; that all the stockholders and directors are nonresidents of this State and give the concerns of the company no personal attention; that, with the exception of one share, all the stock is owned by one family, and by far the majority by one man; that this man is the president of the defendant company, and has acquired and now holds a majority of the bonds secured by the trust mortgage under foreclosure, and is endeavoring to freeze out the minority bondholders represented by the complainant from any substantial realization upon their security; that, pursuant to this unlawful intent, the plant is being allowed to run down, the interest on the bonds has not been paid for four consecutive interest periods; that the good will of the company is being destroyed, and destructive competition by outside concerns is imminent; that the controlling stockholder and president of the company has offered to buy the holdings of these minority bondholders at $33\frac{1}{3}$ cents on the dollar, and, on their refusal to sacrifice their bonds for any such figure, is endeavoring, as charged, to freeze them out. Letters of W. P. Engel, president, majority stockholder and majority bondholder in the Charlotte General Electric Company are made a part of the bill. These letters read as follows:

"DEFIANCE, OHIO, 9–20–07.
"THE UNION TRUST COMPANY,
                    "Detroit, Mich.

" *Gentlemen:* As the owner and holder of a majority in number and amount of the bonds of the Charlotte General Electric Company, of Charlotte, Michigan, of which you are trustee, I hereby notify you and request you to take no action either towards declaring the principal or interest of said bonds, or any part of them due or toward the enforcement or foreclosure thereof, and I notify and request you to cease any such action.

"I own and hold in my possession said bonds Nos. 1 to 24 and 51 to 60, inclusive, being 34 in all of said issue, and hereby offer to produce same to you in evidence of ownership and to secure and indemnify you in all respects as required by you under the mortgage or trust deed.

"W. P. Engel."

"DEFIANCE, OHIO, 9–19–07.
"THE UNION TRUST COMPANY,
"CHARLES R. DUNN,
"Detroit, Mich.

"*Dear Sir:* Your notice of demand on Charlotte bonds, you remember I called and had you make a copy of trust deed and if I am not mistaken I explained how I was caught by L. W. Prior, of Cleveland, in whose hands I had placed the $30,000 bond issue in trust simply holding contract with him to loan me money on these bonds, and before I had received the money he had placed them with other banks as collateral to his individual notes, and the courts held the banks were innocent purchasers and held I must buy them back. Now then Mr. Dunn, I have worked hard, and it seems too bad to pay even more than loaned on these bonds. I have had friends advance me money to buy 17,000 of these bonds at $33\frac{1}{3}$c. I have offered the Guardian Savings & Trust Company $33\frac{1}{3}$c. for the $13,000 they hold, and they refuse it. If I understand the trust deed rightly the consent of the majority of the bondholders only can order a foreclosure. Am I right? I believe I have made a fair offer considering the condition of the plant and its present earnings. Awaiting your reply, I am,

"W. P. ENGEL."

"DEFIANCE, OHIO, Sept. 20–07.
"THE UNION TRUST COMPANY,
"Detroit, Mich.

"*Gentlemen:* Referring to a controversy with the Guardian Trust Company, of Cleveland, Ohio, over the Charlotte General Electric Company bonds, I inclose formal notice to you to take no action in the matter.

"As the owner of a majority of the bonds I have the usual right to control proceedings, and in this case I desire to assert it for the reason that as I have heretofore explained to you these bonds, which were all my property, were placed by me in the hands of Dennison & Prior, of Cleveland, and a portion of them wrongfully pledged by

them without my knowledge with the Guardian Trust Company. I readily settled with the holders of all the bonds except those with the Guardian Trust Company upon a fair basis and made the latter company the same offer. They, however, refused to accept it and have determined to throw the matter into litigation apparently to cause all the trouble possible. Accordingly I hope you will stand impartially and let the Guardian Trust Company fight its own battles.

"Thanking you for your consideration in the past, I remain,

"Yours very truly,
"W. P. ENGEL."

The material parts of the trust mortgage bearing upon the question of receivership are as follows: After a description of the real estate mortgaged as security for the bond issue is the following language:

"And all other property of every name and nature now owned or hereafter acquired by first party, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining, and the rents, issues, and profits thereof: To have and to hold the said property, rights, privileges and franchises of the first party hereinbefore granted and conveyed unto the said Union Trust Company of the second part and to its successors, and also all other property, real, personal or mixed, of every kind and nature, including all rights and easements, franchises, privileges, reversions, and income accruing therefrom, which may now belong to said company or which shall hereafter be acquired by it. To have and to hold all and singular the said granted premises, property, franchises, rights, revenues and appurtenances unto the party of the second part and its successors as continuing trustee forever. In trust, nevertheless, for the uses, and purposes herein expressed and declared, and for the equal pro rata benefit and security of all such persons, firms and corporations as shall from time to time be the owners of any of the said thirty thousand dollars of bonds, as the same may be issued, without any preference or priority of any one outstanding bond over another."

The fifth paragraph of said mortgage provides:

"In case of default in the payment of the principal or interest of any of the bonds secured by this indenture and

outstanding and continuance of such default for the space of six months, such payment having been duly demanded, the party of the second part, if it shall elect so to do, may, and if requested in writing by the stockholders of one-half of such outstanding bonds, shall apply to any court having jurisdiction in the premises, for a foreclosure and sale of the mortgaged premises, property and franchises, and for the appointment of a receiver and shall have the right to designate the person to be appointed such receiver, and so far as lawfully may be done, to direct and control the administration of the mortgaged premises, property and estate by said receiver."

Mr. Engel was not made a party to the litigation. Upon the hearing Mr. Engel's affidavit was read, reading as follows:

"William P. Engel, being first duly sworn, deposes and says that he is president of the defendant herein and of his own knowledge familiar with the facts in this case and the affairs of the defendant, and makes this affidavit in its behalf and with its authority:

"(1) That the complainant, the Union Trust Company, is proceeding, as affiant is informed and believes and avers, only at the request of the Guardian Savings & Trust Company of Cleveland, which obtained its holding, $13,000 par value of said bonds as a pledge for a debt of much less amount, from Dennison, Prior & Co., of Cleveland, who had no right whatever to transfer them or pledge them for their debt.

"(2) Affiant says that the appointment of a receiver herein is useless and unnecessary; that it would greatly damage the business standing and credit of the defendant, and destroy its good will, and work irreparable harm and mischief to its interests; that there are no considerable assets to be collected by a receiver, no perishable property to be conserved; that the current taxes and insurance have all been met promptly as they have accrued.

"(3) Deponent says that he has had 20 years' experience in the electric lighting business and is acquainted with lighting plants over a large extent of territory in Michigan and Ohio and Indiana; was president of the Ohio Electric Light Association for the year 1906–07 with an active membership of 290 central station companies; that the service of the defendant to the city and to private consumers compares very favorably with that of any plant

known to deponent in cities of like size or larger, and the outage is low.

"(4) That business of the defendant has been conducted economically and honestly, and with fair success, and at a much less expense than would be possible under a receivership. The amounts paid the officers and employés for salaries and wages are lower than necessarily would be the case under a receivership, to wit: W. P. Engel, manager, nominally $100 per month. (This has not been paid, and traveling expenses have been paid personally by Mr. Engel.) J. A. Mikesell, superintendent, $60 per month. Engineer, $60 per month. Assistant engineer (night), $50 per month. Fireman (who also does street light trimming), $50. Lineman, $50.

"(5) Affiant says that the contract with the city expired about March 31, 1907; that the only competition for the city lighting to be feared is through the introduction of a high tension current generated in part by water power, which could be offered at a price too low to be met by the defendant; that the prospect of this cheaper supply, and not any lack of efficient service by the defendant, is, to the best of the deponent's information and belief, the controlling reason for the termination of the city contract. The appointment of a receiver would not have any better effect in that regard whatsoever. On the contrary, a receivership on account of its uncertainty, even in the absence of competition, would obviously prevent the renewal of the contract with the city on terms advantageous to the company in point of time or price, and would prevent advantageous private contracts.

"(6) Affiant says that the physical condition of the defendant's property is good; that the plant has not been neglected, but had been kept in good repair, and the income applied according to law, all taxes have been kept paid, and the property and buildings adequately insured, and no liens have been allowed to mature against it; that there has not been any stripping or exploitation of the company's property by it or any one, and there will not be any such, so long as the present management shall control; that a receivership would not in any way better the condition of the property, nor prevent loss or dissipation or depreciation thereof, nor conduce in any way to the better interests of the creditors of the company.

"(7) That no material repairs or alterations of the plant are necessary or justifiable at this time, and none should

be made at the cost of the company or the bondholders nor to be a charge upon the property; that from time to time all additions and improvements necessary to keep the plant and the outside distributing system in good and up to date working order have been made to the full extent of the earnings of the property, supplemented so far as necessary by advancements from this deponent personally; that there has been a complete overhauling of the plant within the last six or seven years, and new generators, new switch boards and appliances and equipment have been put in sufficient to render the physical condition of the property first class."

Affidavits of the mayor of Charlotte, of its city engineer and many prominent citizens were filed, showing the plant was in excellent condition, that its service was good, that the reason the city canceled its contract was not because of poor service, but because it hoped to get a better contract from a power company, but that it was still patronizing defendant company.

When the showing made by both sides is considered, it is clear that there is an entire failure to show extravagant management, inefficient management, or a disposition to let the plant depreciate in value. The circuit judge was of the opinion that because of the provisions of the mortgage the complainant was entitled as a matter of law to a receivership. The solicitors cite, in support of that conclusion, *Michigan Trust Co.* v. *Lumber Co.*, 103 Mich. 392; *Belding* v. *Meloche*, 113 Mich. 223; *Kelly* v. *Bowerman*, 113 Mich. 446, and other cases. We think these cases are distinguishable. The first one of them was a bill filed for specific performance of a contract and for the appointment of a receiver pendente lite. In the court below a receiver was appointed. In this court the order appointing the receiver was vacated. The case of *Belding* v. *Meloche* was a proceeding to foreclose a land contract. No appeal was made from the order appointing a receiver. The case is referred to in *Fifth Nat. Bank* v. *Pierce*, 117 Mich. 376, where it is said:

"This case was a foreclosure of a land contract, where-

in it was agreed that, in case of a default, the grantor should be entitled to possession. It is shown by the opinion that a different conclusion would have been reached had it been a proceeding to foreclose a mortgage. See 2 How. Stat. § 7847; *Wagar* v. *Stone*, 36 Mich. 364.''

*Kelly* v. *Bowerman*, supra, was a case originating in justice's court by an assignee of a lease and is not in point.

Section 11006, 3 Comp. Laws, reads:

''No action of ejectment shall hereafter be maintained by a mortgagee, or his assigns or representatives, for the recovery of the mortgaged premises, until the title thereto shall have become absolute upon a foreclosure of the mortgage.''

This statute has been before this court many times. *Wagar* v. *Stone*, 36 Mich. 364; *Beecher* v. *Rolling Mill Co.*, 40 Mich. 307; *Hazeltine* v. *Granger*, 44 Mich. 503; *Fifth Nat. Bank* v. *Pierce*, 117 Mich. 376, 384; *Hardy* v. *Allegan Circuit Judge*, 147 Mich. 594 (10 L. R. A. [N. S.] 474). In *Hazeltine* v. *Granger*, the mortgage secured to the mortgagee a right to the rents and profits after default and the right to have a receiver appointed without notice. The superior court of Grand Rapids appointed a receiver. This court vacated the appointment. Justice Campbell, speaking for the court, said:

'' The statute does not say that no ejectment shall lie unless there is an agreement to that effect, but that it shall not lie at all. Every mortgage made in common-law form contains words whereby, if applied as they read, possession would belong to the mortgagee and his title would become absolute by default. The whole aim of equity was to arrest this forfeiture, and not to allow the language of a mortgage to have any force against the equity of redemption. The statute is a further step in the same direction for the protection of mortgagors against agreements which, as literally drawn and as theretofore expounded, were deemed dangerous, and against public policy. The language of this mortgage expressly granting rents and profits on default is no stronger than the previous words of grant, and is really narrowed. It was, no doubt, in-

tended to go further and to evade the statute. If it had contained an agreement that ejectment should lie, it could not very well be enforced against the clause of the statute prohibiting it. It can have no greater force in enlarging the jurisdiction of equity to appoint receivers, which we held, in *Wagar* v. *Stone*, had been abolished. Any such attempt to create a forfeiture is contrary to equity, and equity will not enforce it. The same principle which makes all original agreements void which destroy the equity of redemption in advance must cover a partial as well as complete destruction."

See *Union Trust Co.* v. *Railroad*, 4 Dill. (U. S.) 114. The right to appoint a receiver depends upon whether a showing has been made that there is danger of ultimate loss to the bondholders by permitting the property to remain in possession of its owners until the final decree and sale. *Union Trust Co.* v. *Railroad*, 4 Dill. (U. S.) 114; *Union Mut. Life-Ins. Co.* v. *Plaster Co.*, 37 Fed. 286.

No fraud is shown. It is not shown that the owners are not economical in the management of the plant, or that they are allowing it to depreciate. The taxes are paid, and the property has been kept in good repair. The language of Justice Montgomery, speaking for the court in *Michigan Trust Co.* v. *Lumber Co.*, supra, is in point here:

"It has never been the policy of our law to divest the mortgagor of possession until foreclosure and the expiration of the period of redemption; and while we think it within the power of the parties to stipulate that such possession and management of the business may precede foreclosure, and that in such case a court of equity may enforce specifically such an engagement as was held by the court below, and as we think is sustained by the authorities (*Shepley* v. *Railway Co.*, 55 Me. 395; *Shaw* v. *Railroad Co.*, 5 Gray [Mass.], 162; *Sacramento, etc., R. Co.* v. *Superior Court of San Francisco*, 55 Cal. 453; *McLane* v. *Railroad Co.*, 66 Cal. 606; *Rice* v. *Railroad Co.*, 24 Minn. 464), yet such power should be exercised with a full recognition of the settled policy of this State, and should not be exercised except in a case where the right is clearly given by the engagement of the party. See *Beecher* v. *Rolling Mill Co.*, 40 Mich. 307."

See, also, *Morey* v. *Grant*, 48 Mich. 326; *Hall* v. *Wayne Circuit Judge*, 111 Mich. 395.

The order appointing a receiver should be vacated, and the cause remanded for further proceedings.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.