WEBBER v. GENESEE CIRCUIT JUDGE.

1. RECEIVERS — SALE OF CORPORATE PROPERTY — FORECLOSURE OF MORTGAGE—TRUST MORTGAGE—CORPORATIONS—REDEMPTION.

Upon a sufficient showing made to the court, in foreclosure proceedings, that property of a power and light corporation, in the hands of a receiver, cannot be operated at a profit by the receiver, the court may order a sale of

the plant and property for the purpose of stopping the loss, and may order that such sale shall be without the right of redemption.

2. SAME—FRANCHISE—ELECTRICITY—POWER COMPANIES—SALE.
   It is also within the authority of the court of equity to order that the property of the power corporation be sold with its franchises, before the final decree of foreclosure, and to require that the entire property be sold without redemption.

3. SAME — LEASE — FORECLOSURE — AUTHORITY OF EQUITY—MANDAMUS.
   Where the receiver of the property and assets of a power corporation received an offer from another similar company to enter into a lease of the plant and property in his hands at a price which would prevent the continuance of loss, and the court nevertheless ordered a sale of the entire property without redemption, the Supreme Court may, on mandamus proceedings, interfere with the discretion of the trial court, by ordering that the offer be accepted upon the execution of sufficient guaranties and of a bond to secure the performance of the proposal.

Mandamus by George C. Webber against Selden S. Miner, presiding judge of the circuit court for the county of Genesee, to require the respondent to vacate an order of sale of the property and franchise of the Fenton Power & Light Company. Submitted November 24, 1914. (Calendar No. 26,364.) Writ granted conditionally January 4, 1915.

*Fred H. Aldrich* and *Sylvester Pheney*, for relator.

*Farley & Selby*, for respondent.

KUHN, J. The Detroit Trust Company, the trustee in a mortgage given by the Fenton Light & Power Company, a public service lighting company operating a lighting plant in the village of Fenton, Mich., filed its bill for the purpose of protecting its security and restraining the commission of waste, and to foreclose for the amount due on certain mortgage bonds

184 Mich.—8.

remaining unpaid, and interest thereon, and for the appointment of a receiver.

On August 1, 1912, parties claiming to own all of the capital stock of the company had entered into a contract for the sale of the capital stock and property of the company to the relator, who subsequently assigned his interest therein to the Detroit Construction Company, Limited. Under this assignment, if the Detroit Construction Company, Limited, should fail to perform the agreements assigned to it, the relator, George C. Webber, would have the right to perform the agreements and take the property. The Detroit Construction Company, Limited, thereafter leased the property to the Independent Power Company, which maintains power and electric light plants operated by water power at Linden and Holly, and has a transmission wire running from Linden to Holly through the village of Fenton. The plant of the Fenton Light & Power Company at Fenton has always been run by steam power, produced by the consumption of coal.

It is claimed that, when the agreement was entered into, fraudulent and false representations were made by the stockholders of the Fenton Light & Power Company to the relator, and that said stockholders were in part also bondholders, and that their actions were collusive and fraudulent.

Upon a hearing a receiver was appointed, and subsequently a supplemental bill was filed to foreclose the entire mortgage. The receiver thus appointed, finding that the operation of the plant under his management resulted in a considerable loss instead of a profit, petitioned the court in the first instance for permission to sell the personal property without the real estate. Subsequently an amended petition was filed praying for the right to sell all the property of the corporation. An order was thereupon made

by the court that the property of the Fenton Light & Power Company be sold without redemption on the 20th day of July, 1914, and the funds paid to the register of the court, to be held by him until the final order and decree providing for the distribution thereof. Subsequently the relator herein made a motion to set aside this order, which motion being denied, the relator now seeks relief in this court by mandamus to compel respondent to set aside the order providing for the sale of the property. The first question which is thus presented to us for determination is whether the circuit judge has the power to order the sale without redemption of all the property of a *quasi* public corporation before final decree when such property is in the hands of a receiver appointed by him.

There can be no question that, when property is in the hands of a receiver and it is made to appear to the court that it cannot be conducted except at a loss, it is clearly within the power of the court to stop the loss by ordering the assets of the business to be sold. 34 Cyc. pp. 286, 310. It also seems to be the established rule that in the case of a *quasi* public corporation, if a proper showing is made, such a sale may be ordered without the right of redemption. The rule is stated in 27 Cyc. p. 1800, as follows:

"Where the right is given to redeem from judicial sales in general or sales on execution, the statute applied as well to sales made in the enforcement of foreclosure decrees as to those made under ordinary judgments. It has been held that a law providing the right of redemption from sales of real estate does not cover the case of a sale of the entire property of a *quasi* public corporation, such as a railroad or a water company, including its real and personal property and franchises; but such a sale may be made as an entirety and without redemption."

The reason for this rule is thus stated in the case of *Hammock* v. *Loan & Trust Co.*, 105 U. S. 77,

where in a final decree all the property of a railroad company, an Illinois corporation, was ordered sold without redemption:

"The question is therefore presented, for the first time in this court, whether the statutory provisions giving the right to redeem, as well lands or tenements sold under execution, as mortgaged lands sold under decrees of courts of equity, has any application to the real estate of a railroad corporation which, with its franchises and personal property, is mortgaged as an entirety, to secure the payment of money borrowed for railroad purposes.

"Undoubtedly in all such cases, the chief value of the real estate comes from the right or franchise to hold and use it, in connection with the personal property of the corporation, for railroad purposes. * * * In other words, for to that result the argument would lead: The court, in decreeing the sale of the mortgaged property and franchises of a railroad corporation, has no discretion, if the corporation or its judgment creditors so demand, except to order the sale of the real estate separately, in parcels when susceptible of division, and subject to redemption, leaving the franchises and personal property to be sold absolutely and without redemption. Thus one person might become the purchaser of the real estate, another of the franchise, and still others of the personal property. If the railroad company should redeem the real estate, it could not employ it to any valuable end; for its franchise, to be a corporation and to use its real estate for railroad purposes, will have been sold to another, and there is no right under the statute to redeem the franchise, it not being real estate, but, rather, a power or privilege, partaking more or less of sovereignty, and which may not be exercised without a special grant. * * * Consequences equally injurious would flow even from the sale, as an entirety, of the real and personal property and franchises of the corporation, if the right was reserved to the company, or its creditors, to redeem the realty. Individuals or associations desiring railroad property would not purchase when they could not know, until the expiration of 15 months from the confirmation of the sale, whether they were to have all for which they

might bid. During that period of uncertainty, the property would necessarily depreciate in value for the want of repairs and betterments essential to its preservation. A construction of the statute which leads to such results ought not to be adopted, if it can be avoided. And we think it can be, without contravening the spirit of the statute or the public policy which suggested its enactment."

So in the instant case, the business of this company being to furnish electricity for the village of Fenton and its citizens, the plant itself would have comparatively little value without its franchise, and, for the reasons stated in the opinion cited, it was within the power of the court in a proper case to order all the property sold as an entirety and without redemption. See, also, *Peoria, etc., R. Co.* v. *Thompson*, 103 Ill. 187; *Farmers' Loan & Trust Co.* v. *Water Co.* (C. C.), 78 Fed. 881; *Columbia Finance & Trust Co.* v. *Railway Co.*, 60 Fed. 794, 9 C. C. A. 264; *Pacific N. W. Packing Co.* v. *Allen*, 116 Fed. 312, 54 C. C. A. 648; *McKenzie* v. *Water Co.*, 6 N. D. 361 (71 N. W. 608, 614).

At the hearing of the motion for leave to sell said property, the following offer of the Independent Power Company to lease the property and operate it without loss to the receiver, pending a hearing and final decree, was called to the attention of the court:

"To F. ALEXANDER BAIRD,
    "Receiver of Fenton Light & Power Company,
        "Fenton, Michigan.

"The undersigned hereby offer to lease from you all of the property of the Fenton Light & Power Company, located in the village of Fenton, Genesee county, Michigan, from the date of your acceptance of this offer until the termination of the cause wherein you were appointed a receiver, or until such time as such lease shall be terminated by order of the court, and will pay to you for such lease, on the 15th day of each and every month, a sum which shall be sufficient to pay the interest on all outstanding bonds

of the said Fenton Light & Power Company, to wit, the sum of twenty thousand ($20,000) dollars, and that it will pay to you, as such receiver, further sums sufficient to pay all taxes that shall be levied against the said property during the continuance of the said lease and a further sum sufficient to pay all premiums of insurance upon the said property which you may procure during the continuance of said lease, and the undersigned will at the termination of the period of said lease turn over to you or your successors the said plant in as good a condition as the same shall be in when received by the undersigned, natural wear and use, and damage by the elements only, excepted.

"INDEPENDENT POWER COMPANY,
"By FRED H. ALDRICH, President.
"By GEO. W. EYSTER, Secretary."

It being within the power of the court to make the order of sale, the only other question which presents itself is whether, considering the facts in this case, the court acted properly in ordering the sale as it did. While we hesitate to interfere with the discretion which the court exercised in the instant case in ordering the sale, nevertheless, in view of the fact that if the sale is made it will be impossible on the final decree to put the parties back in the position which they occupied at the time the proceedings were begun, and having in mind the policy in this State not to divest the mortgagor of his property unless it clearly appears that there is danger of ultimate loss to the bondholders (see *Wagar* v. *Stone,* 36 Mich. 364; *Hazeltine* v. *Granger,* 44 Mich. 503 [7 N. W. 74] ; *Michigan Trust Co.* v. *Lumber Co.,* 103 Mich. 392 [61 N. W. 668] ; *Dawson* v. *Peter,* 119 Mich. 274 [77 N. W. 997] ; *Union Trust Co.* v. *Electric Co.,* 152 Mich. 568 [116 N. W. 379] ), in our opinion no sale should be ordered if the court is satisfied that the Independent Power Company is in a position to carry out the offer made as above set forth. If this offer should be accepted and a sufficient guaranty given that it will be

carried out, no further financial loss would then result from the management of the plant by the receiver, and the rights of the parties could be determined before a sale is ordered.

We are therefore of the opinion that if the Independent Power Company within ten days tenders the receiver a lease incorporating the terms of the offer above set forth, together with a bond conditioned that it will carry out its terms, in such sum and with such surety or sureties as may be approved by the trial judge, then the order providing for the sale should be set aside as prayed for; but, in case no such lease is tendered and no bond given within the time mentioned, then the writ will be denied.

BROOKE, C. J., and MCALVAY, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.