COLUMBIA FINANCE & TRUST CO. v. KENTUCKY UNION RY. Co. et al.

(Circuit Court of Appeals, Sixth Circuit. February 5, 1894.)

No. 128.

1. RAILROAD MORTGAGES—FORECLOSURE—PARTIES—SUBROGATION.

A land company which guaranties the mortgage bonds of a railway company, and afterwards joins the latter in borrowing money with which to pay the interest coupons, does not thereby become subrogated, pro tanto, to the rights of the mortgagee, so as to become an indispensable, or even a proper, party to a subsequent foreclosure suit; for subrogation does not take place until the payment of the whole debt for which the surety is liable.

2. SAME—RAILROAD CHARTER—CONSTRUCTION.

A land company was authorized to guaranty the bonds of a railway company by the following provision contained in the charter of the latter: "And, in order to enable said company to guaranty the punctual payment of the interest and principal of such bonds, it is hereby expressly declared that the guarantors of such bonds shall be entitled to all the benefits of such mortgage or deed of trust made to secure such bonds to the same beneficial extent that the holders of said bonds may be entitled." Held, that this was a mere declaration of the principles of subrogation, and could not be construed as placing the guarantor who had made only a partial payment upon an equal footing with mortgage creditors.

3. SAME—AFTER-ACQUIRED PROPERTY—LEASE OF OTHER RAILROADS.

A railroad mortgage covering, among other things, "all the corporate rights, privileges, franchises, and immunities, and all things in action, contracts, claims, and demands of the said party of the first part, whether now owned or hereafter acquired in connection or relating to said railroad," is sufficient to include a subsequently acquired lease of a belt railway whereby the company acquired access to a city at one of its terminals.

4. SAME—FORECLOSURE DECREE—TIME FOR REDEMPTION.

The time to be allowed for payment of a railroad mortgage after the entry of a foreclosure decree is within the discretion of the court, and the allowance of only four months is not an abuse thereof.

5. SAME—SALE—APPRAISEMENT AND REDEMPTION.

When railroad franchises and property, both real and personal, are mortgaged, and are to be sold on foreclosure, they are to be treated as an entirety, and this entirety is not "real estate" within the meaning of the Kentucky statute which requires an appraisement as a prerequisite

**to** a judicial sale of real estate, and allows one year for redemption when the property does not bring two-thirds of its appraised value (Gen. St. c. 63, art. 8). Hammock v. Trust Co., 105 U. S. 77, followed.

Appeal from the Circuit Court of the United States for the District of Kentucky.

This is an appeal from a decree of foreclosure and sale of the Kentucky Union Railway. That railway has been constructed and is in operation between the city of Lexington, Ky., and the town of Jackson, Breathitt county, Ky., a distance of about 95 miles, a few miles of which were completed by the receiver in the case, under order of court, and with money raised by the issue of receiver's certificates. The complainants in the original bill were J. Kennedy Todd & Co. and the Central Trust Company. The former claimed to be general creditors of the Kentucky Union Railway Company to the amount of $270,000, and the Central Trust Company is the trustee in the first mortgages executed by the railway company to secure the sum of $2,500,000 of bonds. The defendants were the railway company and the Columbia Finance & Trust Company, the trustee in the second mortgage. The second mortgage was to secure the sum of $1,300,000 of bonds, of which $800,000 were outstanding. Both the first and second mortgage bonds were absolutely guarantied, both principal and interest, by the Kentucky Union Land Company, which company was not made a party to the suit. Upon the allegations of insolvency the court appointed a re-receiver to take charge of the railway company. During the progress of the cause, many intervening petitions were filed, setting up claims for liens upon the property, but no question arises upon this appeal concerning them. From the final decree of foreclosure and sale the Columbia Finance & Trust Company, trustee in the second mortgage, has prosecuted its appeal without supersedeas, and the Central Trust Company, trustee in the first mortgage, has prosecuted an appeal with supersedeas; the only error assigned in the latter case being also one of those assigned in the former. The appeal of the Central Trust Company was disposed of at a former term by a stipulation entered into by all of the parties interested therein, by which the decree in the matter complained of was by agreement modified. The errors now to be disposed of arise alone upon the appeal of the Columbia Finance & Trust Company.

St. John Boyle, for appellant.

Olin, Rives & Montgomery, Butler, Stillman & Hubbard, and Humphrey & Davie, for J. Kennedy Todd & Co. and Central Trust Company.

William Lindsay, for Passenger & Belt Railway Company.

Before TAFT and LURTON, Circuit Judges, and RICKS, District Judge.

LURTON, Circuit Judge (after stating the facts). 1. The first error assigned is in rejecting the amended answer tendered by the Columbia Finance & Trust Company on the 20th day of December, 1892, and in proceeding with the cause without requiring the Ken-

tucky Union Land Company to be made a p. .ty thereto. It appears from this answer that the Kentucky Union Land Company guarantied the payment of the principal and interest of the first mortgage bonds, which guaranty was indorsed thereon; that this guaranty was made under authority of the charter of the Kentucky Union Railway Company. It further appears that when the coupons of this issue of bonds became due on January 1, 1891, the land company and the railway company jointly borrowed on their notes $60,000, from J. Kennedy Todd & Co., and with the money paid that series of coupons. The insistence of the appellant is that the Kentucky Union Land Company became by said payments entitled to a lien upon the railroad to secure the payment of this sum of $60,000, which was used for the payment of coupons, and that it was error to proceed without bringing that company before the court, that its lien might be established and enforced.

The unquestioned general rule as to parties in chancery is that all parties who are interested in the controversy should be made parties to the cause in order that there may be an end of litigation. If the Kentucky Union Land Company, by the payment alleged to have been made by it, as guarantor, became thereby entitled to a lien upon the property of the railway company, through subrogation, then it would have been a proper party, as it would have been interested in the property proceeded against. It would, however, in no sense be an indispensable party, because it would not have been directly affected by a decree enforcing the liens held by the holders of the first and second mortgage bonds. The distinction between a person directly interested in a controversy and directly affected by the decree, and one only indirectly affected by the decree, is well stated by Mr. Justice Bradley in the case of Williams v. Bankhead, 19 Wall. 571. We do not think that the Kentucky Union Land Company was an indispensable, or even a proper, party. It had made, at most, but a partial payment on account of its liability as guarantor. The rights of the creditor in the mortgaged property had not been extinguished by a payment of the whole debt. The payment of the whole debt for which the surety is liable is essential to subrogation. If the surety, upon making a partial payment, became entitled to subrogation pro tanto, and thereby became entitled to the position of an assignee of the property to the extent of such payment, it would operate to place such surety upon a footing of equality with the holders of the unpaid part of the debt, and, in case the property was insufficient to pay the remainder of the debt for which the guarantor was bound, the loss would logically fall proportionately upon the creditor and upon the surety. Such a result would be grossly inequitable. Yet this is in effect the result of the contention urged. The equity of subrogation does not arise from the mere obligation to pay; it springs alone from payment. The liability of the surety for the remainder of the debt continued as well after as before such payment, and until the entire debt is paid the surety has no such equity as will entitle him to the active aid of a court of equity. Sheld. Subr. § 127; Hollingsworth v. Floyd, 2 Har. & G. 91; Insurance Co. v. Dorsey, 3 Md. Ch. 334.

The creditors' rights in the mortgage must be entirely divested before the surety can be substituted by operation of law, and allowed to stand in the shoes of a creditor.   Magee v. Leggett, 48 Miss. 139; Bank v. Benedict, 15 Conn. 437; Gannet v. Blodget, 39 N. H. 152; Harlan v. Sweeny, 1 Lea, 682; Gilliam v. Esselman, 5 Sneed, 86; Kyner v. Kyner, 6 Watts, 221.   The provision in the charter of the Kentucky Railway Company upon which appellants insist that they have a statutory right of subrogation was in these words:

"And, in order to enable said company to guaranty the punctual payment of the interest and principal of such bonds, it is hereby expressly declared that the guarantors of such bonds shall be entitled to all the benefits of such mortgage or deed of trust made to secure such bonds to the same beneficial extent that the holders of said bonds may be entitled."

This is no more than a general declaration of the principles of subrogation.   There is nothing in this provision which can be reasonably construed as placing the guarantor upon an equal footing with a creditor secured by a mortgage as a result of every partial payment.   The case of Railroad Co. v. Schutte, 103 U. S. 141, is not controlling.   The charter provisions there considered are altogether unlike the provision contained in the charter of the Kentucky Union Railway Company.

2. The second error assigned is that "the court erred in adjudging that the right, title, and interest acquired by the Kentucky Union Railway Company, under the contract lease of the Passenger & Belt Railroad, was included or covered by the mortgage to the Central Trust Company." The property embraced by the contract referred to consisted of about five miles of belt railroad around the city of Lexington, Ky., and certain interests in lands adjacent to the right of way and belonging to the Belt Railroad.   It clearly appears that the Kentucky Union Railway Company constructed its line to the boundary of the city of Lexington in such way as that it had no entrance into the city and no terminal facilities, and no connection with other railway lines entering that city.   Its main line terminated at the boundary of the city in view of a purpose to obtain connection with other lines and terminal facilities by means of a contract with the Belt Railroad.   This line gave to the Kentucky Union Railway Company connection with several other railway lines entering Lexington, and afforded it terminal facilities in the city.   The contract of lease was made after the mortgage to the Central Trust Company, and was, indeed, completed under direction of the circuit court after appointment of receivers; that court being of opinion that it was necessary as a means of affording connection with other lines, and proper terminal facilities.   That this leasehold passed as after-acquired property by the express terms of the mortgage to the Central Trust Company we have no doubt.   The provision in that mortgage describing the property covered by it is as follows:

"All and singular its line of railroad, built and to be built, beginning at a point in Lexington, Fayette county, Kentucky; thence through Fayette and Clark counties to Kentucky Union Junction, on the line of the Elizabethtown, Lexington & Big Sandy Railroad; thence to Clay City; thence

via Three Forks Jackson, in Breathitt county, being a distance of about one hundred miles. And also the lands, real estate, telegraph lines, railroad tracks, side tracks, bridges, viaducts, buildings, depots, station houses, car houses, engine houses, shops, warehouses, turntables, water stations, fences, structures, erections, fixtures, and appurtenances, and all other things of whatever kind belonging or in any wise appertaining, or which have been or may be acquired or provided for use upon or in connection with said railroad, and all the lands acquired, or that shall hereafter be acquired, destined for warehouses and other structures for railroad uses at either terminus, as well as along the line of said railroad; and also all locomotives, engines, cars, and other rolling stock, equipment, machinery, instruments, tools, implements, furniture, and other chattels now or hereafter belonging to or appertaining to said railroad, and all property, both real and personal, of every kind and description, which shall hereafter be acquired for use on said railroad; and all the corporate rights, privileges, franchises, and immunities, and all things in action, contracts, claims, and demands of the said party of the first part, whether now owned or hereafter acquired in connection or relating to the said railroad; together with all and singular the tenements and appurtenances thereunto belonging, and the reversions, remainders, tolls, incomes, rents, issues, and profits thereof; and also all estate, right, title, and interest whatsoever at law, as well as in equity, of said party of the first part, of, in, and to the same, saving and excepting subscriptions of cash or securities and lands not to be used in the operation of said railroad or in connection therewith."

The terms covering after-acquired property are abundantly sufficient to embrace this lease contract. Trust Co. v. Kneeland, 138 U. S. 416, 11 Sup. Ct. 357; Railroad Co. v. Hamilton, 134 U. S. 297, 10 Sup. Ct. 546; Branch v. Jesup, 106 U. S. 468, 1 Sup. Ct. 495.

3. The third error assigned is as to the decree ordering a sale of the interest of the Kentucky Union Railway Company acquired and held by it under the contract of lease of the property of the Passenger & Belt Railway. By the decree it was ordered that "all right, title, and interest shall pass to and be vested in the purchaser under this decree; subject, however, to all the terms, conditions, and limitations set forth in said contract of lease, as ratified by the circuit court in its decree of April, 1892." The part of the decree assigned as error follows, and is in these words:

"And the purchaser shall assume and perform all the obligations imposed therein upon the Kentucky Union Railway Company; but this provision shall not be held to create any lien for the performance of such obligations upon any of the property herein ordered to be sold, other than the properties acquired under said lease."

From so much of the decree as is set out above the original complainants, J. Kennedy Todd & Co. and the Central Trust Company, prosecuted a writ of error with supersedeas. That writ of error has been disposed of at a former day of this term upon a stipulation, signed by all of the parties in interest, assenting to a modification of the decree by striking out the paragraph last set out, and the subject of the third assignment of error relied upon by the appellant, the Columbia Finance & Trust Company, is thereby disposed of.

4. The next assignment of error is as to so much of the decree nisi which ordered a sale of the road unless the decree should be satisfied by paying off the sums adjudged to be due within four months. The complaint is that the time for payment in order to save a sale was unreasonably short. The period allowed for pay-

ment before a decree of foreclosure becomes absolute is within the discretion of the court. Howell v. Railroad Co., 94 U. S. 463. There was no such reasonable exercise of this discretion as to justify this court in maintaining this assignment.

5. The fifth assignment of error is that the circuit court ordered a sale without redemption and without appraisement. This road is wholly situated within the state of Kentucky. The insistence is that the railroad is real estate within the meaning of the statute of the state of Kentucky of April 9, 1878 (chapter 63, art. 8, of the General Statutes), which provides as follows:

"(1) That before any real estate shall be hereafter sold, in pursuance of any order or judgment of a court, the commissioner or officer, whose duty it may be to sell the same, shall cause it to be valued, under oath, by two disinterested intelligent housekeepers of the county, not related to either party. If they disagree, the commissioner or officer shall act as umpire. If a part only of a tract of land is sold, the part sold shall, after the sale, be revalued in like manner. (2) The valuation so made shall be in writing, signed by the persons making it, and returned by such commissioner or officer to the court which made the order or rendered the judgment for the sale of the property, and the same shall be filed among the papers of the cause in which the judgment was rendered or the order made and also spread upon the records of the court. (3) If the real estate which may be sold in pursuance of such judgment or order does not bring two-thirds of such valuation, the defendant and his representatives shall have the right to redeem the same within a year from the day of sale by paying the purchaser or his representatives the original purchase money and ten per centum per annum interest thereon. The defendant redeeming his land shall take receipt from the purchaser and lodge the same with the clerk of the court, and the same shall be entered upon the records of the court. The defendant may tender the redemption to the purchaser, his agent, or attorney, if in the county where the land lies, or in the county in which the judgment is obtained or order of sale made; and if the same is refused, or if the purchaser does not reside in either of said counties, the defendant may, before the expiration of the year, go to the clerk of the court in which the judgment is rendered or the order made and make affidavit of such tender and refusal, or that the purchaser, his agent, or attorney, does not reside in either of said counties. Thereupon he may pay to such clerk the redemption money for the purchaser, and the clerk shall give a receipt therefor and file said affidavit among the papers of the cause. When the right of redemption exists the defendant may remain in possession of the property until it expires. Real estate so sold shall not be conveyed to the purchaser until the right to redeem the same has expired, and if the same be redeemed in accordance with the provisions of this act, such sale thereof, from and after such redemption, or from and after such deposit of the redemption money with the clerk, be null and void."

A state law conferring a right of redemption after a sale by execution, or under a decree to enforce a lien or mortgage, is obligatory upon federal courts sitting in equity as to lands within said state, and decrees of sale should be made so as to conform to the laws of the state so far as may be necessary to give full effect to the right. Brine v. Insurance Co., 96 U. S. 627; Orvis v. Powell, 98 U. S. 176; Parker v. Dacres, 130 U. S. 43, 9 Sup. Ct. 433. If the statute of Kentucky, above cited, applies to a railroad situated within the state, then the decree does not conform to the law of the state. A like question was decided by the supreme court of the United States in Hammock v. Trust Co., 105 U. S. 77. The question in that case arose under the redemption statutes of the

state of Illinois. The statute of that state provided for the redemption of lands "sold under and by virtue of any decree of a court of equity for a sale of mortgaged lands." It was provided with reference to the latter case "that it should be lawful for the mortgagor of such lands, his executors, administrators, or grantees, to redeem the same in the manner prescribed for the redemption of lands sold by virtue of executions issued upon judgments at common law; and judgment creditors may redeem lands sold under any such decree, in the same manner as is prescribed for the redemption of lands sold upon execution upon judgments issued at common law." Upon elaborate consideration it was unanimously decided by that court that a railroad was not within the provision of that statute. The learned counsel for the appellant have undertaken to draw a distinction between the state of the law of Kentucky and that of Illinois, which they have argued is sufficient to distinguish this case from the case of Hammock v. Trust Co., supra. These distinctions are predicated upon the propositions: (1) That under the law of Illinois a railroad property consisted in; (a) its franchises; (b) its movable property, such as rolling stock, supplies, etc., which were under the common law personalty; (c) its right of way, to which was affixed its rails, bridges, culverts, depots, etc., and which was clearly real estate. The conclusion drawn from this common-law division of its property was commented on by the supreme court of the United States as fatal to the insistence that, when a railroad was mortgaged as an entirety, it was redeemable as "real estate," within the meaning of the Illinois statute conferring the right of redemption when real estate was sold to enforce the lien of a mortgage, which, under the law, covered the franchises, personalty, and realty as unitedly constituting a railroad. In contrast it has been insisted that, under the decisions of the highest court of Kentucky, at the time the mortgage to the Central Trust Company was executed in 1888: (a) A railroad was a unit, and that its movable property was so affixed to its real estate as to be held fixtures, and therefore inseparable. To support this proposition the cases of Phillips v. Winslow, 18 B. Mon. 448, and Railroad Co. v. Elizabethtown, 12 Bush, 233, have been cited. (b) That, in harmony with this, the same court has held that railroad shares descend as realty to the heirs, and are subject to dower. Price v. Price's Heirs, 6 Dana, 107, and Copeland v. Copeland, 7 Bush, 349. (c) That the franchises of a railway company are not prerogative franchises, and that a railway could be operated without a franchise. Railroad Co. v. Metcalfe, 4 Metc. (Ky.) 199. The cases cited do not, in our judgment, support the conclusion sought to be drawn.

Phillips v. Winslow, supra, was a case where a trustee under second mortgage made to secure an issue of bonds, and covering all the property of the company then in existence, as well as all after-acquired property, filed a bill to enjoin certain proceedings at law by judgment creditors, one of whom had levied on certain movable property and was about to sell, while the other had seized and sold, and bought at his own sale under execution, certain cars, car wheels, firewood, and stone coal, being supplies for the operation

of the road. The levy was exclusively upon property acquired after the mortgage under which the plaintiff claimed, but was embraced by the clause covering after-acquired property. After deciding that the property was not subject to seizure by execution, because it was embraced in the mortgage, the court was confronted with the proposition that the plaintiff had an ample remedy at law by replevin or an action for damages. This the court decided upon a consideration of the irreparable character of the damage to creditors having a mortgage upon a railway as a unit which would result to them from such a seizure in view of the unity of railroad property, and the great inconveniences resulting to the public from the interference with the equipment and necessary supplies of a common carrier. The court did not decide that the rolling stock of a railroad passed with the realty as a fixture. It certainly did not decide that cordwood and stone coal were fixtures, and yet the reasoning of the court was applied as much to such supplies as it was to the freight cars and detached car wheels, which were also in the levy. In the subsequent case of Railroad Co. v. Elizabethtown, supra, it was expressly ruled that a municipality could not dismember a railroad by a seizure for taxes of the engines and cars of a railway company. It is true that Lindsay, C. J., did, in passing upon this question, observe that in Phillips v. Winslow the engines and cars of a railroad "were treated as fixtures." But that case was not, as we have seen, put on any such ground, and indeed no such question arose for decision. Neither that case nor the decision in Railroad Co. v. Elizabethtown rested upon any technical consideration of the law of fixtures. The first went off, so far as the point now in question is concerned, upon the question of equitable remedy. The latter was vested upon the high and rational ground that a railroad was an entirety, and, being charged with quasi public duties as a common carrier, could not, from considerations of public policy, be disabled or dismembered by seizure under execution of its necessary equipments or supplies. It is true both cases recognized the unity of a railroad property resulting from its structure and utility. Severance of such a property is destructive of the interests of all concerned, and disables the road in the discharge of its public functions. Neither case held that a railroad property considered as an entirety was technically realty. Neither do the cases which decide that stocks in railway companies descend as realty bear upon the question. In both cases the court recognized that such shares represented both real and personal property, and ruled that this fact did not conflict with their classification as incorporeal hereditaments. On this subject that court, in Price v. Price's Heirs, 6 Dana, 107, said:

"The right conferred on each shareholder is unquestionably an incorporeal hereditament. It is a right of perpetual duration; and, though it springs out of the use of personalty, as well as lands and houses, this matters not. It is a franchise which has ever been classed in that class of real estate denominated an incorporeal hereditament. An annuity, though only chargeable upon the person of the grantor, is an incorporeal hereditament; and, though the owner's security is merely personal, yet he may have a real estate in it. 2 Bl. Comm. 40. Much less can it be doubted that a franchise

created by act of incorporation, unlimited in duration, and springing out of the combined use of lands and personalty, should be denominated and classed as real estate."

These cases do not preclude us from considering the inherent nature of the several kinds of property which constitute that great public work called a railroad. Neither do they serve to throw any valuable light in determining whether such a property, when lawfully mortgaged as an entirety, is "real estate" within the intent of the Kentucky statute conferring the right to redeem real estate when sold to foreclose a mortgage. That statute, in our judgment, did not contemplate either the severance of a railroad, when sold, into its constituent elements, in order that that part which savored of realty might be redeemable; nor did it contemplate that so peculiar and composite a property should be embraced within the term "real estate" as used in that statute. The value of such a property consists in its maintenance as a unit. This unit the state provided might be mortgaged. It would be unprofitable to consider whether an individual, or a group of individuals, could own and operate a railroad without express authority. The franchise to be a railway, to exercise the great power of eminent domain, and to exact tolls for freight and passengers, was a franchise of value, and this, too, the legislature has permitted this company to embrace within its mortgage. Upon it credit has been extended. This is a part of the entirety which the creditors secured by this mortgage, and have a right to bring it to sale, along with the tangible property which it secures and renders valuable. That franchise is not real estate, and is not leviable at law. The controlling reasons which induced the decision in Hammock v. Trust Co. sprang from a consideration of the unity of a railroad property. These reasons are as masterful, when we come to construe this Kentucky statute, as they were in the case from Illinois. The distinction between the two statutes, and differences in the general law of Illinois and Kentucky, are not sufficiently marked to justify, certainly not to demand, that this case shall be distinguished from Hammock v. Trust Co.

We are the better satisfied with our conclusion when we look at the state of the law of Kentucky at the time the circuit court was called upon to construe this redemption statute: (1) In 1871, long antecedent to this mortgage, the legislature of Kentucky, manifestly induced thereto by the case of Price v. Price's Heirs, and the case of Copeland v. Copeland, cited above, passed an act declaring railway shares personal property. (2) By section 212 of the new constitution of Kentucky, adopted in 1891, and in force when this decree was entered, it was enacted that the rolling stock of a railroad should "be considered personal property, and liable to execution and sale in the same manner as the personal property of individuals." Clearly this constitutional recognition of the movable property of a railroad as personal property disabled the court from holding that the personal property of this road should be redeemable as "real estate." It would therefore follow that, if any right of redemption exists in the case of the sale of a railroad, it must be limited to so much of the railroad property as was real property

under the law of Kentucky at the time of the sale. The reasons of public inconvenience, and the absolute injury which would result to lien creditors whose liens embraced the whole property arising from such dismemberment and partial right of redemption, would demand another construction of the redemption statute if one was admissible under well-settled rules of law. The decree, as modified by the stipulation before mentioned, must be affirmed. The costs will be equally divided between the appellant and the Passenger & Belt Railroad. This division is made in consequence of the stipulation made upon the appeal of the Central Trust Company, by which the present appellant's third assignment of error was in effect conceded to have been well taken.