## MACKAY v. GABEL et al.

(Circuit Court, S. D. California, S. D. July 10, 1902.)

1. VENDOR AND PURCHASER—BONA FIDE PURCHASER—VALUABLE CONSIDERATION.

To constitute one a bona fide purchaser of real estate, entitled to protection in his legal title as against the equitable owner, the payment of a valuable consideration is essential; and a consideration which, although monetary, is merely nominal, when compared with the known value of the property, is not a valuable one, such as to give the grantee standing in a court of equity as a bona fide purchaser, but, on the contrary, raises an irresistible inference of bad faith.

2. PARTIES—SUIT TO CANCEL DEED—NECESSITY OF JOINING GRANTOR.

The grantor in a deed is not an indispensable party to a suit by a third person, claiming to be the equitable owner, to set the deed aside, and to establish complainant's title to the property, where it is admitted in the pleadings of both parties that such deed conveyed to the defendant all of the grantor's right, title, and interest.

3. SAME—EQUITY—DISPENSING WITH PARTIES.

A federal court of equity will not refuse to grant relief because of the nonjoinder as a defendant of a person who is out of the jurisdiction, where it appears that, while a proper party, he has no interest in the subject-matter of the controversy which will be affected by a decree between the parties.

In Equity. On exceptions to pleas.

Lloyd & Wood and Hunsaker & Britt, for complainant.
H. C. Dillon and George A. Corbin, for defendants.

ROSS, Circuit Judge. By his amended bill in this suit the complainant charges that he is, and for more than five years last past has been, the owner and engaged in the development and working of a certain mining claim called the "Grand Reef Mine," situated in Graham county, in the territory of Arizona, and in such work has already expended more than $300,000; that up to the 23d day of April, 1900, one J. W. Payne was employed by the complainant as superintendent of the said work, to whom the complainant intrusted the entire management of the property, having reposed full confidence and reliance in and upon his honesty, faithfulness, and integrity; that while Payne was so employed it was deemed expedient by the complainant to acquire a certain described tract of land for the purpose of sinking a well thereon from which to develop water to be conducted to the mine, to be there used in and about the work of prospecting and developing the property, and of extracting and reducing the ores therefrom; that, acting solely for the complainant, and in pursuance of his aforesaid employment, and at the request of the complainant, and for his use and benefit, and with money supplied to him by the complainant for that purpose, Payne acquired the piece of land mentioned, taking the title thereto in his own name, but with the distinct understanding between him and the complainant that he was acting therein for the complainant, and as his agent, and that he would convey to the complainant the title so acquired, and that in the meanwhile he would hold such title in trust for the complainant; that after the purchase by Payne of the tract of land

mentioned the complainant took possession thereof, and began the sinking of a well thereon, and, having found a supply of water therein, complainant purchased and placed at the well upon the land a pumping plant consisting of engine, boiler, and pump, and other machinery required for and about the work, and connected the same by pipe line with the machinery at the mine, and did thereupon put the same in operation, and commence to and did pump the water from the well by the machinery mentioned, and did conduct it therefrom by means of the pipe line so constructed to the mine, where the same was exclusively used in and about its operation; that all of the acts of the complainant in and about the sinking of the well, the purchase, erection, and putting in place of the pumping plant and pipe line, and in the use of the same for the pumping of the water and the conducting of the same to the mine for the purposes stated, were done with the full knowledge and consent of Payne, and under his direction as the superintendent and managing agent of the complainant, and with his money; that the complainant has, ever since entering upon the possession of the said piece of land, retained its open and notorious possession, and has at all times used the said land and water plant for the purposes aforesaid openly, notoriously, and exclusively; that, notwithstanding the facts stated, and notwithstanding the trust and confidence reposed in him by the complainant, the said Payne, in violation of his duties as such trustee, and in disregard of the rights of the complainant, and against his will, did, on or about the 5th day of April, 1901, wrongfully and fraudulently, by deed absolute in form, grant and convey to the defendants to this suit the said piece of land, together with the said pumping plant and pipe line and appurtenances thereunto belonging, which deed the defendants thereafter caused to be recorded in the office of the county recorder of the county in which the property is situated, and have notified the complainant that they now claim the said land, pumping plant, and pipe line, and threaten to take forcible possession thereof. It is alleged in the bill that at the time the defendants took from Payne the deed they well knew and had notice of all of the facts stated, and that the complainant was in possession of all of the said property, and that he had caused the well to be sunk, and the pumping plant to be erected, and the pipe line to be laid for the purpose of obtaining a supply of water for use at his Grand Reef mine, and that all the money expended in and about the matter had been furnished and supplied by the complainant, and that Payne acquired and held the legal title to the land in trust for the complainant, and not otherwise. The defendants, by their answer, admit the acquiring by Payne of the title to the piece of land mentioned, and while denying, among other things, the alleged possession of the complainant thereof, and any and all notice on their part of any right on the part of the complainant therein, expressly allege the conveyance of the property in question by Payne to them by the deed referred to, and, in addition to the denials contained in the answer, they set up two affirmative defenses, one of which is:

"That the complainant ought not to have his action aforesaid, because they aver that previously to and on the 5th day of April, 1901, said J. W.

Payne was, or pretended to be, seised in fee simple, and was in, or pretended to be in, actual possession, of the property concerning which this suit is brought and sought to be recovered by the complainant herein, to wit [describing the land], together with the appurtenances, as in the said amended bill are particularly mentioned and described, free from all incumbrances, equities, claims, demands, or trusts whatsoever; and these defendants, believing the said Payne was so seised and entitled, and that the said premises and property were in fact free from all incumbrances, equities, claims, demands, and trusts in favor of any person whomsoever, on or about the 1st day of January, 1901, agreed with the said Payne for the absolute purchase of the fee simple and inheritance thereof for and in consideration of certain services thereafter to be performed by said defendants for said Payne and whatever moneys might be paid out or expenses incurred by them therein or thereabout; whereupon, and on said 5th day of April, 1901, for the considerations aforesaid, at the county of Los Angeles, in the state of California, the said Payne did make, execute, and deliver to defendants his certain deed to said premises mentioned and described in paragraph 6 of plaintiff's said amended bill, and by the said deed the said Payne, in consideration of the sum of ten ($10) dollars, granted, bargained, sold, and confirmed unto these defendants the premises and property last above mentioned, to hold unto and to the use of said defendants, their heirs and assigns, forever; and these defendants aver that the said sum of ten ($10) dollars, the consideration money in the said deed mentioned, was actually laid out and expended for and on behalf of said Payne, and said services had been performed by said defendants for said Payne, at and before the execution of the deed aforesaid; and these defendants also aver that at or before the time of the execution of said deed by said Payne to these defendants, and the payment of the said purchase money and the performance of said services, these defendants had no notice whatsoever that the said land and appurtenances were held in trust by the said Payne for the use and benefit of complainant, or that the same were in any manner affected by any equity, claim, or trust in favor of any person whomsoever; and these defendants insist that they are bona fide purchasers of the said hereditaments and premises for a good and valuable consideration, and that they have not at any time before or at the time of purchasing said hereditaments and premises or since, until the said complainant's bill was filed, any notice whatsoever, either expressed or implied, of the said trust and equity now claimed by the complainant, or that the same in any wise affected the said hereditaments and premises so purchased by defendants, or any part thereof; and these allegations the defendants make in bar of the complainant's bill, and pray that they may have the same benefit therefrom as if they had formally pleaded the same."

The second affirmative defense set up by the defendants is the nonjoinder of Payne as party defendant, who, it appears from an amendment to the amended bill, was, at the time of the commencement of the suit, and ever since has been, a resident of the territory of Arizona, and therefore without the jurisdiction of this court.

Exceptions to the two affirmative defenses thus set up were filed by the complainant, and are now for disposition. These exceptions, I think, must be sustained. It is nowhere alleged in the first plea to which an exception is filed that the complainant was not in the actual possession of the property in question at the time of the defendants' alleged purchase and the making of the deed by Payne to them, and, although it is alleged therein that the defendants agreed, in consideration of such conveyance, to perform services, there is no statement as to the character or nature or value of the services which were to be performed as the consideration for the conveyance of the property, nor is there any averment as to the character or value of

any services actually performed by the defendants in consideration of such conveyance. It is averred in the plea that the defendants paid $10 for the property, which is the only definite consideration pleaded. Such a sum, if it be the true consideration, for 160 acres of water-bearing land in an arid region, upon which was admittedly constructed and in operation a pumping plant consisting of an engine, boiler, and pump, together with a line of pipe extending therefrom to a large mine, through which pipe the water so developed and pumped was being conducted for the operation of the mine, is enough to raise an irresistible inference of fraud in the conveyance. In considering a similar question, the court of appeals for the Eighth circuit said, in the case of Dunn v. Barnum, 2 C. C. A. 265, 269, 51 Fed. 355, 359:

"But, independently of French's testimony, the bad faith of the transaction is apparent upon the face of the deed when the value of the property is considered. The consideration expressed in the deed is $100, and at the time the deed was executed the land was worth $30,000, with a prospect of a rapid increase in value, and it is now worth $1,000,000, or more. However it may have been in past ages, it is certain that in this age, when capital is so abundant, and dealers in land so numerous, and eager to purchase wherever the investment gives promise of a profit, no man can openly acquire in the market, at private sale, a good and unimpeachable title to $30,000 worth of land for $100 without exciting the gravest suspicions as to his good faith and the honesty of the transaction. It would seem that one could not purchase land worth $30,000 for $100 without a well-grounded suspicion either that the seller was insane or that his title was bad. In the judgment of all mankind—and there is no surer guide to the right than the universal consensus of opinion among men—such a transaction, unexplained, implies a bad title or bad faith. The instant such a conveyance is set up as evidence of a purchase in good faith and for value of a sound title, the inference is irresistible that it was procured by fraud, or for a fraudulent purpose. Such a conveyance passes the legal title, and may be good between the parties as a gift, or as a conveyance to remove a cloud from the title, or as a sale of a confessedly doubtful and disputed title, and for such like purposes; but when it is set up and relied on under the registration laws of the state as a means of taking lands from the real owner because, a.d only because, his deed was not recorded, it will not be accepted as sufficient evidence that the vendee paid a valuable consideration, and purchased without notice, either actual or constructive, or a well-grounded suspicion, that his vendor had no title. A valuable consideration, actually paid, is an essential requisite. In the sense of this rule, as applied to this class of cases, the consideration expressed in the deed to Furber is not a valuable one. The same sum of money is not equally a valuable consideration in all cases. Whether it is so or not depends on the relation it bears to the value of the property claimed to have been purchased with it. When the consideration is infinitesimal, merely nominal, compared to the value of the property, it will not be accepted as a valuable consideration by a court of equity, as against one claiming under a prior unrecorded deed. The enormous discrepancy between the consideration expressed in this deed and the value of the land compels the conclusion that the grantee knew, or, what is the same thing in legal effect, had good reason to believe, there was a fatal infirmity in the title he was acquiring, and so was not a purchaser in good faith. At that time numerous satisfactory sources of information were open to any one desirous of learning the facts about the title to this land. One put upon inquiry and seeking the truth could not have failed to learn the facts. An offer to sell land worth $30,000 for $100 was enough to arouse suspicion and excite inquiry in the most lethargic mind; and if inquiry was not made, and the facts not learned, it was because the purchaser deliberately and purposely abstained from doing so, to avoid the actual knowledge of facts he with good reason believed to

exist; and this is the legal equivalent of actual notice. Hume v. Franzen (Iowa, 1887) 34 N. W. 490; Knapp v. Bailey (Me., 1887) 9 Atl. 122, 1 Am. St. Rep. 295; Gaines v. Saunders (Ark., 1888) 7 S. W. 301; Hoppin v. Doty, 25 Wis. 573."

"Purchasers," said the Virginia court of appeals in Burwell's Adm'rs v. Fauber, 21 Grat. 446, 463, "are bound to use a due degree of caution in making their purchases, or they will not be entitled to protection. Caveat emptor is one of the best settled maxims of the law, and applies exclusively to the purchaser. He must take care, and make due inquiries, or he may not be a bona fide purchaser. He is bound not only by actual, but also by constructive, notice, which is the same in its effect as actual notice."

See, also, Coal Co. v. Doran, 142 U. S. 417, 12 Sup. Ct. 239, 35 L. Ed. 1063; Henderson v. Wanamaker, 25 C. C. A. 181, 79 Fed. 736.

Is Payne an indispensable party to the suit? The bill alleges that the deed from him vested the legal title to the property in question in the defendants, and their answer not only admits the averment, but affirmatively alleges the execution of the deed, and, further, that it was made in good faith, and for value, and passed all of Payne's interest to them. Payne having, according to the pleadings of the parties, parted with all of the interest he ever had in the property, prior to the commencement of the suit, obviously retained no interest therein to be affected by any judgment that may be rendered in the suit. If he were dead, it would hardly be contended that his legal representatives would have an interest in the property so conveyed by him during his lifetime, rendering them indispensable parties to such a suit. No more, in my opinion, is he an indispensable party during his life. No judgment that can be rendered in the suit can affect any property right of his, not only because the pleadings of the parties to the suit show that he parted with all of his interest in the property, of every character, prior to its commencement, but also for the reason that no judgment of any character is sought against him. In Barney v. City of Baltimore, 73 U. S. 280, 284, 18 L. Ed. 825, the court said:

"The learning on the subject of parties to suits in chancery is copious, and within a limited extent the principles which govern their introduction are flexible. There is a class of persons having such relations to the matter in controversy, merely formal or otherwise, that, while they may be proper parties, the court will take no account of the omission to make them parties. There is another class of persons whose relations to the suit are such that, if their interest and their absence are formally brought to the attention of the court, it will require them to be made parties, if within its jurisdiction, before deciding the case. But, if this cannot be done, it will proceed to administer such relief as may be in its power between the parties before it. And there is a third class, whose interests in the subject-matter of the suit and in the relief sought are so bound up with that of the other parties that their legal presence as parties to the proceeding is an absolute necessity, without which the court cannot proceed. In such cases the court refuses to entertain the suit when these parties cannot be subjected to its jurisdiction. This class cannot be better described than in the language of this court in Shields v. Barrow, 17 How. 130, 15 L. Ed. 158, in which a very able and satisfactory discussion of the whole subject is had. They are there said to be 'persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting this interest or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience.'"

"The general rule as to parties in chancery," said the same court in Williams v. Bankhead, 86 U. S. 563, 571, 22 L. Ed. 184, "is that all ought to be made parties who are interested in the controversy, in order that there may be an end of litigation. But there are qualifications of this rule arising out of public policy and the necessities of particular cases. The true distinction appears to be as follows: First. Where a person will be directly affected by a decree, he is an indispensable party, unless the parties are too numerous to be brought before the court, when the case is subject to a special rule. Secondly. Where a person is interested in the controversy, but will not be directly affected by a decree made in his absence, he is not an indispensable party, but he should be made a party, if possible, and the court will not proceed to a decree without him if he can be reached. Thirdly. Where he is not interested in the controversy between the immediate litigants, but has an interest in the subject-matter, which may be conveniently settled in the suit, and thereby prevent further litigation, he may be made a party or not, at the option of the complainant."

See, also, Cameron v. McRoberts, 3 Wheat. 591, 4 L. Ed. 467; Osborn v. Bank of U. S., 9 Wheat. 738, 6 L. Ed. 204; Harding v. Handy, 11 Wheat. 132, 6 L. Ed. 429.

The rule thus established by the supreme court was affirmed by statute as well as by the equity rules. By section 1 of the act of congress of February 28, 1839, it is provided that:

"When there are several defendants in any suit at law or in equity and one or more of them are neither inhabitants of, nor found within, the district in which the suit is brought, and do not voluntarily appear, the court may entertain jurisdiction and proceed to the trial and adjudication of the suit between the parties who are properly before it; but the judgment or decree rendered therein shall not conclude or prejudice the parties not regularly served with process, nor voluntarily appearing to answer; and nonjoinder of parties who are not inhabitants of nor found within the district as aforesaid, shall not constitute matter of abatement or objection to the suit."

And equity rule No. 47 declares that:

"In all cases where it shall appear to the court that persons who might otherwise be deemed necessary or proper parties to the suit cannot be made parties by reason of their being out of the jurisdiction of the court, or incapable otherwise of being parties, or because their joinder would oust the jurisdiction of the court as to the parties before the court, the court may, in their discretion, proceed in the case, without making such persons parties; and in such cases the decree shall be without prejudice to the rights of the absent parties."

See, also, Mining Co. v. Dangberg (C. C.) 81 Fed. 73; Columbia Finance & Trust Co. v. Kentucky Union R. Co., 9 C. C. A. 264, 60 Fed. 794.

It is obvious that cases in which an interest in the property in controversy remains in a person not made a party, and who it is claimed should be, are not in point, for the simple reason that in this case, according to the pleadings of the parties, no interest of any character in the property in controversy remained in Payne after his conveyance to the defendants, and no judgment of any character is sought against him by the complainant.

An order will be entered sustaining the exceptions to the affirmative defenses mentioned, being exceptions numbered 3 and 4. Exceptions numbered 1 and 2 having been withdrawn at the argument, no order in respect to them is necessary.