# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS, THE DISTRICT COURTS, AND THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

**PENNSYLVANIA CO. FOR INS. ON LIVES AND GRANTING ANNUITIES, v. PHILADELPHIA CO. et al.**

**GATES et al. v. SAME.**

(Circuit Court of Appeals, Third Circuit, May 25, 1920. Rehearing Denied August 14, 1920.)

Nos. 2551, 2552.

1. **Appeal and error ⊜80(6)—Order directing receiver to pay out part of fund is appealable.**

    Order directing receiver to pay out part of the fund in his hands to a claimant is a final determination as to that part of the fund, from which an appeal may be taken by creditors interested in the fund.

2. **Appeal and error ⊜150(6)—Interest of creditors, intervenors below, sufficient to sustain appeal.**

    Creditors of an insolvent corporation, who were permitted to intervene below to oppose the payment to another of a fund in which they claimed an interest, have sufficient interest to enable them to maintain an appeal from the order for payment of the fund as against a motion to dismiss.

3. **Receivers ⊜155—Operating revenue payable for maintenance of the system, including rentals to subsidiaries.**

    The revenue from fares collected from a street railway system in the hands of the receiver of the holding corporation is payable for expenses of maintaining the system as a unit, including the payment of rentals to subsidiary corporations necessary to prevent foreclosure of mortgages on the property of such corporation.

4. **Receivers ⊜152—Operating revenues above current expenses are for creditors in order of priority.**

    The excess of operating revenues over current expenses of operating a street railway system in the hands of receivers constitute a fund in execution in the court for the benefit of creditors in the order of their priority, determined under the same rules as if the fund were derived from execution.

5. **Receivers ⊜150—Bondholders have interest in receivership funds before default in payment on bonds sufficient to oppose payments thereof.**

    The holders of bonds secured by mortgage on property of subsidiary corporations have an interest in the fund in the hands of the receiver of

---

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the holding corporation, from which alone the subsidiary corporations derive their revenue, sufficient to entitle them to oppose the payment of such funds to other creditors, even though there has, as ordered, been no default in payment of interest on the bonds held by them.

6. **Receivers** ☞150—**Bondholders of subsidiary company have interest in receivership funds of leased company sufficient to entitle them to oppose payment thereof.**

Holders of bonds of a subsidiary company are entitled to oppose the unwarranted payment of funds received from operating revenue by the receiver of the holding corporation, notwithstanding the rule that a mortgagee out of possession is not entitled to rents and profits, since the mortgagee is entitled to avail himself of any security which the mortgagor holds against a third person.

7. **Subrogation** ☞28—**Guarantor of subsidiary companies' bonds has no right to reimbursement by the receiver for advances before paying entire debt.**

A guarantor of the bonds of subsidiary street railways companies, which had under its guaranty advanced sums to pay the interest on the bonds, is not entitled to repayment of a part of the sums advanced, from the receiver of a holding corporation, under any theory, legal or equitable, before it becomes entitled to subrogation to the rights of the subsidiary corporation by paying the entire obligation.

Buffington, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Separate interventions by the Pennsylvania Company for Insurance on Lives and Granting Annuities, trustee, and by Thomas S. Gates and others as a committee for bondholders, against the Philadelphia Company and others, in receivership proceedings against the Pittsburgh Railways Company, to oppose payment of a fund to the Philadelphia Company. From an order directing the payment, the named interveners separately appeal. Motions to dismiss appeals denied, and orders reversed.

Thomas Patterson, of Pittsburgh, Pa., George Wharton Pepper, of Philadelphia, Pa., and Watson & Freeman, of Pittsburgh, Pa., for appellants.

George B. Gordon and Edwin W. Smith, both of Pittsburgh, Pa., for appellees.

Before BUFFINGTON, WOOLLEY, and HAIGHT, Circuit Judges.

WOOLLEY, Circuit Judge. The matter which these appeals bring here for review grew out of the highly complicated relations of the many corporations comprising the street railway system of Pittsburgh, and concerns but one of many rulings which the District Court has been called upon to make in the difficult operation of that system by receivers. We have recently had occasion to state with care the structure of the system and the relation its parts bear one to another. Allen v. Philadelphia Co. (C. C. A.) 265 Fed. 817. We shall, therefore, do no more in this opinion than give in outline so much of its organization as will bring to view the question before us and disclose the reasons for our decision.

Pittsburgh Railways Company controlled through stock ownership, leases and operating contracts, sundry street railway corporations, which in turn controlled through similar means other railway corporations, and they in turn still others, numbering in all about sixty, through whose lines, on being connected, it operated six hundred miles of street railways in the City of Pittsburgh and in forty other municipalities in the Pittsburgh district. The leases or operating contracts, extending from the most distant subsidiaries to and through the intermediary ones and centering ultimately in the Pittsburgh Railways Company, usually provided—as a part of the rentals—for the payment of money sufficient to meet interest obligations on the bonds of the underlying companies. Such rentals were the only source of income of the subsidiaries and to them alone they looked for money with which to take up their interest coupons. Their bond issues were many, differing greatly in amount, character, priorities and relative rank. To insure the flotation or to strengthen the security of about half of these bonds, Philadelphia Company, a corporation engaged in operating public utilities of different kinds, owning all the stock of Pittsburgh Railways Company, became guarantor for the payment of their interest and principal, leaving the other half without the security of its guaranty.

Among the bonds thus guaranteed were, for instance, issues of three companies subsidiary to Pittsburgh Railways Company, namely; Allegheny, Bellevue & Perrysville Railways Company, Morningside Electric Street Railways Company and Mt. Washington Street Railway Company. The Pennsylvania Company for Insurance on Lives and Granting Annuities, one of the appellants here, is trustee under mortgages made to secure these issues. Of bond issues of underlying companies not so guaranteed, Thomas S. Gates and his associates, the other appellants, comprising a bondholders' committee, hold bonds of forty or more of the underlying companies in an amount of many million dollars.

In 1918, being unable to meet its current obligations, receivers were appointed for the Pittsburgh Railways Company on a general creditors' bill. Manifestly, it was to the interest of everyone—the public, Philadelphia Company, Pittsburgh Railways Company, the underlying companies and holders of their bonds as well—that the many lines of railways brought together and welded into one great system under the name of Pittsburgh Railways Company should not be broken up. With this constantly in view, the court has guided the operation of the properties by the receivers under adverse war conditions and has disposed of the inadequate revenues coming into their hands in a manner to prevent foreclosure and consequent disintegration. It directed payment of rentals to certain subsidiaries whose primary or senior liens held such advantageous positions as to invite foreclosure, thereby forestalling foreclosure and disruption; leaving secondary, subordinate, or junior liens of these and other corporations unsatisfied, in the belief, doubtless, that their disadvantageous positions were in themselves security against foreclosure. The court, however, went still further in its plan to distribute income in a manner to pre-

vent foreclosure, and availed itself of the guarantees of the Philadelphia Company as an asset of the situation. When the decreasing income would admit of nothing else, it authorized distribution only to those underlying primary and senior liens which did not have the Philadelphia Company's guaranty, leaving the holders of guaranteed bonds to look for payment of interest to their surety, although some of these bonds were of equal rank with the others.

To meet its obligations of guaranty, the Philadelphia Company, when confronted by impending default of underlying companies in the payment of interest on their bonds, advanced, not to Pittsburgh Railways Company, but to the underlying companies themselves, various sums of money amounting in all to $1,217,602. With the sums so advanced from time to time, the underlying companies paid the interest coupons of their bond obligations.

In the course of its administration, the revenues of the receivership increased, due largely to an increase of fare. Thereupon Philadelphia Company petitioned the court to direct the receivers to reimburse it for all moneys it had thus advanced. The petition was resisted by the receivers, by the City of Pittsburgh—because of the railway companies' franchise obligations—by a trustee of mortgages issued to secure bonds which were guaranteed, and by a bondholders' committee holding bonds in the main not guaranteed, the latter two being the appellants in this proceeding. The court, pursuing its policy of protecting senior liens as a means of holding together the railway system for the good of all, denied the petition of Philadelphia Company in so far as it asked for reimbursement of moneys paid by it on its liability as guarantor of subordinate or junior liens, but granted its petition in so far as it asked for reimbursement for moneys paid by it as guarantor of first and primary liens, up to the first of October, 1919, amounting in the aggregate to $495,145, and entered an order accordingly. From this order, these appeals have been taken.

The appellants are met on the threshold by a motion of the appellees to dismiss the appeals on two grounds: First, that the order appealed from is not final; and, second, that the Pennsylvania Company for Insurance on Lives and Granting Annuities, Trustee, is a mortgagee out of possession with nothing due, and that the bondholders' committee could in no event receive the money, and, that, as both are without interest in the fund, both are without right to maintain these appeals.

[1] In denying this motion, it is sufficient to say, very briefly, that the order appealed from directs the payment of the fund to one determined to be entitled to it. It is both a disposition of the fund and a determination of the rights of everyone claiming it. On performance, the money would pass beyond the control of the court forever. As nothing remains to be done, except to pay over the money, it is a final determination of the particular matter, and is, therefore, a final decree and appealable, although the receivership, having to do with innumerable unrelated matters, shall still continue. Ruggles v. Patton, 143 Fed. 312, 74 C. C. A. 450; Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157.

[2] The appellants' right of appeal depends upon their interest in the fund, and upon their interest in the fund depended their right to intervene and be heard in the court below. They did intervene and they were heard. The appellants' claimed interest in the fund was there in collision with the appellees' claimed right to the fund and was considered and disposed of by the court, as shown by its opinion and order. Therefore, we regard the appellants' interest as a matter more properly to be considered on review of the whole controversy brought here on appeal than on motion to dismiss the appeal.

What interest, if any, did the appellants, in their different capacities of trustee under mortgages and holders of bonds of various issues of underlying companies, have in the fund which entitled them to be heard with reference to its disbursement?

This question involves two others: First, the character of the fund; and, second, the relation which these claimants bear to it.

[3] We think the fund may be properly described as operating revenue. It represents the accumulation of car fares collected by the receivers of Pittsburgh Railways Company from the many railway lines of subsidiaries in their possession and operation. It is applicable as well to the cost of maintaining as to the cost of operating these lines in one system. The cost of maintaining the system involves incontestably the payment of rentals to subsidiaries in order to enable them to meet their interest obligations, but for which foreclosure and the system's disruption would inevitably follow.

[4] If the fund had arisen in the same way at a time when the Pittsburgh Railways Company was not in the hands of receivers, and if that company had signified its intention to respond to a like demand of the Philadelphia Company for reimbursement for like advances, it may be that trustees of trust mortgages and bondholders would be without interest in the fund capable of assertion and therefore without right to oppose such disbursement. But the situation here is different. We are not concerned with a solvent debtor disposing of its assets in a manner that would neither disturb its solvency nor deplete the security of its creditors. We are concerned with an insolvent debtor, in the hands of receivers, collecting revenues indiscriminately from the operation of various street railway lines in its possession—properties pledged to secure creditors —and after placing the revenues in a receivership fund, proposing to pay a part of it to one, who, if a creditor at all, is not a creditor of the rank of others. These many railway lines gathered together in one great system have been taken in equitable execution by receivers on a general creditors' bill. The properties thus being in execution, it is clear that the revenues arising from them are equally in execution, and after payment of current expenses, are held for the benefit of all creditors according to their rank and priority, determinable in the same manner as if execution at law had been levied. Thomas v. Cincinnati, etc., Ry. Co. (C. C.) 91 Fed. 202, 204; Haehnlen v. Drayton, 192 Fed. (C. C. A. 3d) 300, 112 C. C. A. 558.

[5] Among these creditors are the intervenors below and appellants on these appeals. Being creditors they bear to the fund the rela-

tion of execution creditors to property levied upon, and, accordingly, have an interest in the fund, both present and prospective. They, of course, have no present interest in the fund in the sense of a present right to demand and receive it, when, in fact, there has occurred no default in interest payments due them. But, as the revenues of the receivers were gathered from the pledged properties, taken and held in equitable execution, and as such revenues are liable prospectively for the payment of interest debts when they become due, the trustee of trust mortgages and holders of bonds have a present interest in a transaction that tends unlawfully to divert these revenues and thereby to diminish the debtor's capacity to meet its prospective obligations.

[6] The appellees' claim that the appellant mortgagee trustee and bondholders have no interest in the fund because they are in the position of a mortgagee out of possession, and are not, accordingly, entitled to the rents and profits of the mortgaged premises, does not dispose of the question of the appellants' interest in the fund; because there enters here another principle, that one who has assumed the payment of a mortgage debt is in equity liable to the mortgagee for any deficiency, upon the equitable doctrine that a creditor (the mortgagee) is entitled to avail himself of any security which his debtor (the mortgagor) holds against a third person (in this case Pittsburgh Railways Company) for the payment of the debt. Keller v. Ashford, 133 U. S. 610, 10 Sup. Ct. 494, 33 L. Ed. 667; Union Mut. Life Insurance Co. v. Hanford, 143 U. S. 187, 12 Sup. Ct. 437, 36 L. Ed. 118; Crowell v. Hospital of St. Barnabas, 27 N. J. Eq. 650. This principle of equity is applicable to the undertaking of Pittsburgh Railways Company under its operating contracts with its subsidiaries to pay rentals covering interest on their mortgages issued to secure bonds, and makes Pittsburgh Railways Company, so long as these contracts are in force, ultimately liable in equity to the trustees of the mortgages and to bondholders for any deficiency remaining after the mortgagors' default. To protect the enforcement of this right by preserving from depletion a fund against which it might prospectively be asserted, we think the appellants had as intervenors below an interest which entitled them to be heard, and on an adverse ruling, an interest which entitles them to bring and maintain these appeals. Being of this opinion, the next question is:

[7] What legal or equitable right had the Philadelphia Company to the fund?

This is the main question in the case, because it is to be noted that the appellants challenge the court's order directing payment of the fund to the Philadelphia Company, not as an abuse of its discretion in the administration of the receivership, but as erroneous because opposed by law and equity.

The only possible right of the Philadelphia Company to reimbursement by the receivers of Pittsburgh Railways Company arises from its undertakings of guaranty and its part performance. By force of these undertakings, Philadelphia Company advanced money, not to Pittsburgh Railways Company, nor to its receivers, but directly to the underlying companies with which it had contracted. It then came

to the receivers of the Pittsburgh Railways Company and asked them for reimbursement for advances thus made to these subsidiaries. On what ground? If the Philadelphia Company made these advances voluntarily, it cannot, upon obvious principles, come to the receivers as a volunteer and make a valid claim for reimbursement. There is, moreover, a doubt whether the Philadelphia Company is even a general creditor of the Pittsburgh Railways Company or of its receivers, entitling it to demand reimbursement; for there is no evidence that either the Pittsburgh Railways Company or the receivers contracted with the Philadelphia Company to make the advances or to reimburse it for them. The contrary is indicated by the resistance the receivers made to its petition for reimbursement. Nor did the Philadelphia Company come into court in the character of a lien creditor; for its demand to be reimbursed for advances was not based either on assignments by the subsidiaries of their claims against the Pittsburgh Railways Company or on its possession of the interest coupons taken up with its money. Nor can it claim reimbursement on the ground that these advances constitute an operative expense of the receivership, because it made them, not to the receivers in aid of their operation, but to subsidiaries not themselves in the hands of receivers. Nor were they made at the instance of the receivers, but by compulsion of its own contracts of guaranty. While no doubt the advances enured greatly to the benefit of the receivership and aided materially the purpose of the court to hold the system together, they did not constitute an expense of operation either incurred by or imposed upon the receivers. True, if the Philadelphia Company had not made the advances, the receivers would have had to pay the rentals or suffer the danger of foreclosure and disruption of the system. But the situation contained the element of the Philadelphia Company's guarantees. These compelled the Philadelphia Company to make advances or default on its own contracts. Once having made the advances as guarantor, the Philadelphia Company had open to it two remedies for reimbursement; one as a general creditor against the subsidiaries whose bonds it had guaranteed· and whose debts it had in part paid; the other against the receivers of Pittsburgh Railways Company when it had reached a position in which it could invoke the doctrine of subrogation.

As the Philadelphia Company is not here seeking reimbursement from the debtor subsidiaries, our only concern is whether it is entitled to reimbursement by way of subrogation from the receivers of Pittsburgh Railways Company under its contracts with the debtor subsidiaries. At the hearing below, counsel for those opposing the petition insistently urged that the Philadelphia Company could not prevail on this ground as it had not paid in full the debts it had guaranteed, and, therefore, was not in position to succeed to and assert creditors' rights. Of the same opinion evidently was the learned trial judge, for in resting his order on other grounds, he said that the principle of subrogation "ought not to control in the case." Of the same opinion probably were counsel for the Philadelphia Company, for when they came into this court, they did not, either in their brief

or at the oral argument, discuss the question at all, but sought to sustain the order on the ground of its justice and equity. From the position taken by the court below, and from the line of argument pursued by appellees' counsel, as well as from the undisputed fact that the Philadelphia Company had performed its guarantees only in part, we do not find it necessary to discuss what seems to be without exception the settled law that payment of the whole debt for which a surety is liable is essential to subrogation. Columbia Finance & Trust Co. v. Kentucky Union Ry. Co., 60 Fed. 794, 796, 9 C. C. A. 264; Kortlander v. Elston, 52 Fed. 180, 2 C. C. A. 657; Musgrave v. Dickson, 172 Pa. 629, 632, 33 Atl. 705, 51 Am. St. Rep. 765; Morrison v. Citizens' National Bank, 65 N. H. 253, 20 Atl. 300, 9 L. R. A. 282, 23 Am. St. Rep. 39; Brandt on Suretyship, § 338; 25 R. C. L. 1318, 1319.

From this analysis of the case, we are at a loss to find by what right, legal or equitable, the Philadelphia Company can validly assert a claim for reimbursement from the receivers of Pittsburgh Railways Company for moneys it was by its own contracts required to advance to that company's subsidiaries. We realize the underlying purpose of the court's order, which was to prevent dismemberment of the system and consequent disadvantages, amounting perhaps to disaster, to many of its creditors, but we do not see just how the court's order reimbursing the Philadelphia Company for moneys which by its obligations of guaranty it was bound to advance the subsidiaries, tended to prevent dismemberment of the system; nor how an order refusing reimbursement would tend to bring it about.

We are loath to disturb any of the rulings which the District Court has been called upon to make in its admirable administraton of this most difficult receivership, yet we cannot avoid finding that in the order appealed from the court fell into error. While we are constrained to reverse the order, we limit our decree strictly to the matter before us and neither express nor intimate an opinion as to the manner in which the District Court shall dispose of this or any other fund in the hands of its receivers.

The order below is reversed.

BUFFINGTON, Circuit Judge, dissents.